WAGNER, Respondent v. WAGNER et al., Defendants
and
MILLETT, Intervenor and Appellant

(163 N.W.2d 339)

(File No. 10468. Opinion filed December 13, 1968)
Rehearing denied January 16, 1969

**Bogue & Weeks,** Vermillion, for intervenor and appellant.

**Dana, Golden, Moore & Rasmussen,** Sioux Falls, for plaintiff and respondent.

**John F. Murphy,** Elk Point, for defendant Julius Wagner, Adm'r of Estate of Walter Wagner, Dec.

**Wayne W. Christensen,** Elk Point, for defendant Bank of Union County.

HOMEYER, Judge (on reassignment).

This is an action to determine adverse claims to a joint bank checking account under the provisions of SDC 1960 Supp. 37.16. The plaintiff, Kathleen Wagner, is the widow of Walter Wagner, who died intestate on March 9, 1966, at the veterans hospital in Sioux Falls and left surviving him as his heirs in ad-

dition to plaintiff, a son, Robert Wagner, and a daughter, Eleanore Millett. Defendants in the action are Julius Wagner, administrator of the Walter Wagner estate, the Bank of Union County at Elk Point where the money is on deposit, and the State of South Dakota.[1] Eleanore Millett intervened in the action. She and the administrator claim the account is an asset of the estate and should be distributed under the laws of intestacy. Plaintiff claims and the court decreed her to be the sole owner thereof. The intervenor has appealed.

The principal issue is whether the evidence will support the court's determination. There is little dispute in the evidence.

Plaintiff and Walter Wagner were married in 1942. They had no children. His children are from a prior marriage. They were divorced in 1946, but remarried about six months later. Walter Wagner owned and operated a filling station and cafe at the junction of U.S. Highway 77 and State Highway 50 in Union County for many years before his death. The Wagners lived in an apartment above the station and Mrs. Wagner was in charge of the cafe part of the business. Sometimes she assisted in pumping gas.

Since 1961 Walter Wagner did practically all of his banking business at the defendant bank. Before that, he banked at Vermillion. On February 2, 1961, he opened a checking account at Elk Point and signed the usual signature card for checking account-individual. This is the only account he had with the defendant bank until March 2, 1966. On that date plaintiff and her husband stopped at the bank and conferred with the cashier, L. E. Van Bockern, with reference to creating a savings account. Van Bockern explained the various types of accounts and the effect thereof after which at their request a joint savings account was opened in their names with an initial deposit of $2,000. The Wagners also signed the bank form for a "joint and several account, Payable to either or the survivor" and were issued a savings passbook in which both were named.

1. The State of South Dakota was named defendant to secure a determination of inheritance taxes. It filed a disclaimer.

There is no contention that plaintiff is not entitled to the balance in this account.

On or about March 5, 1966, the Wagners again appeared at the bank and conversed with Van Bockern about changing the checking account to a joint account. Again a like explanation was made and Van Bockern testified they were specifically told that in a joint account if one of them died it would belong to the survivor. No change was then made, but Walter Wagner said he wished to think about it for a few days. Van Bockern communicated the fact of the inquiry to Loyal C. Olson, executive vice president of the defendant bank. Olson was also aware of the previously established joint savings account.

On the evening of March 7, 1966, the Wagners learned that Walter Wagner could be admitted to the veterans hospital at 10 a. m. the next day. He had been in ill health for several years. At his request plaintiff telephoned Olson to come to the filling station the next morning to transact some bank business. Olson was delayed, but after another call from Mrs. Wagner the next morning, he arrived at about 9 a. m. Olson testified that he and Walter Wagner sat at the counter in the cafe and he was informed of the prospective hospitalization, that the length thereof was uncertain, that it might be necessary to buy gasoline and supplies while he was gone and he wanted the "account changed so that Mrs. Wagner could conduct the business". In response to the question "What did you tell him, if anything?" Olson testified he said: "* * * Walter, do you want to make this a joint account with right of survivorship, and he (Walter) said yes". Olson then produced a blank signature card directed to defendant bank, wrote "Walter W. Wagner and Kathleen Wagner as joint owners" with the date on the front side and each of them signed on the back side. The following is printed above their signatures:

"JOINT ACCOUNT-PAYABLE TO EITHER OR SURVIVOR We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common,

and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

Walter W. Wagner (s)
Kathleen Wagner (s)"

Before departing for Sioux Falls, Wagner asked Olson if the account could be changed back "to like it was before" if he wanted to do this after he returned from the hospital, and Olson informed him that this could be done.

Olson returned to the bank and placed the card in the alphabetical index file of signature cards. He testified he "considered a joint account had been established". No change was made in the ledger sheet and no new ledger sheet was made. This, he said, was in keeping with customary practices of the bank.

The foregoing constitutes a summary of the evidence which we consider material on the issue of ownership of the joint bank account involved in this litigation. On such evidence the trial court found that on March 8, 1966, Walter Wagner intended to divest himself of the exclusive ownership and control of the checking account and vest ownership and control jointly in himself and plaintiff with the attendant right of survivorship. In our opinion the evidence supports such finding.

By its decision in Barbour v. First Citizens National Bank of Watertown, 77 S.D. 106, 86 N.W.2d 526, this court accepted the contract theory in joint bank account cases. In an earlier case, In re Lower's Estate,[2] 48 S.D. 173, 203 N.W. 312, we had

---

2. In Lower, the court differentiated a New York case on which appellant relied by stating that New York had a statute making a joint deposit payable to the survivor "a joint ownership (with) a right of survivorship" and we have no such statute.

held the four unities of time, title, interest and possession essential to sustain ·a common-law joint tenancy were also necessary to vest survivorship rights in joint bank accounts. Lower was decided under SDC 51.0212 which was subsequently amended.[3]

In Barbour, we said a bank account may be so created that two persons shall be the owners thereof during their mutual lives with the survivor taking the whole on the death of the other; that this can most logically be accomplished by recognizing and giving effect to the contract of deposit; that the relationship between the depositor and the bank is in the nature of a contract for the benefit of a third party. Referring to SDC 1960 Supp. 6.0414,[4] we said this statute was enacted primarily for the protection of depository banks, but it also expresses legislative approval and recognition of joint bank accounts and sanctions their payment according to the contract of deposit.

Courts in other states have similarly held that the legislature by enacting a statute authorizing a bank to pay a joint account to a survivor intended to create a property right in the survivor. O'Brien v. Biegger, 233 Iowa 1179, 11 N.W.2d 412; Dyste v. Farmers & Mechanics Savings Bank, 179 Minn. 430, 229 N.W. 865; In Re Curran's Estate, 161 Neb. 78, 71 N.W.2d 723; In re Staver's Estate, 218 Wis. 114, 260 N.W. 655; In re Lewis. Estate, 194 Miss. 480, 13 So.2d 20; Hawkins v. Thackston, 224 S.C. 445, 79 S.E.2d 714.

---

3. "A joint (tenancy) interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants. (Any deed, transfer or assignment of real or personal property from husband to wife or from wife to husband which conveys an interest in the grantor's lands or personal property and by its terms evinces an intent on the part of the grantor to create a joint tenancy between grantor and grantee shall be held and construed to create such joint tenancy, and any husband and wife who are grantor and grantee in any such deed, transfer or assignment heretofore given shall hold the property described in such deed, transfer or assignment as joint tenants. Any deed, transfer or assignment of real or personal property to two or more grantees, including any deed in which a grantor is also a grantee, which, by the method of describing such grantees or by the language of the granting habendum clause therein evinces an intent to create a joint tenancy in grantees shall be held and construed to create such joint tenancy.)" The parts in parentheses were added by amendment. Ch. 255, S.L.1951.

4. S.D.C. 1960 Supp. 6.0414: "Whenever a deposit has been made or shall hereafter be made, in any bank in the names of two or more persons, payable to any of them, or payable to any of them or the survivor of them, such deposit or any part thereof, or any interest or dividend thereon; may be paid to any one or more of said persons whether the others·be living or not; and the receipt of acquittance of the person or persons so paid shall be a valid and sufficient release and discharge to the bank for any payment so· made."

In Barbour, we said the controlling consideration is the intention of the original depositor. "Whether or not the original depositor intended the joint account for his own convenience or for the benefit of the nondepositing payee is a factual question to be determined from all the facts and circumstances in the case. The form of the contract of deposit is not itself controlling. * * * In the absence of contrary evidence, however, it serves as prima facie proof of beneficial intent." We thus appear to be aligned with those jurisdictions where the parol evidence rule is not applicable although in Barbour the signature card was signed by only one party. See Annot., 33 A.L.R.2d 569.

■■ In Barbour, we said the burden of proof was on the survivor to show that the contract was made for his benefit. We believe this statement not to be in harmony with other portions of the opinion. The Wisconsin court in considering a statute[5] essentially identical with our own said:

> "Although the form of the account is not conclusive, as we said in the cases supra, an account opened in joint names raises a rebuttable presumption that the creator of such an account intended the usual rights incident to jointly owned property, such as rights of survivorship, to attach to it. Evidence showing a different intent, for instance that the joint names were adopted for convenience without the intent of conferring ownership, may serve to prove agency or trusteeship in the third party in respect to the account but in the absence of such evidence, which must be clear and satisfactory, the presumption that the depositor intended the usual incidents of jointly held property when he opened a joint account is sufficient to support a finding to that effect." Estate of Pfeifer, 1 Wis.2d 609, 85 N.W.2d 370.

In our opinion, the Wisconsin rule quoted above is sound and more in conformity with our statutes and we hereby adopt it. See also Estate of Kemmerer, 16 Wis.2d 480, 114 N.W.2d 803;

---

5. W.S.A. 221.45. See also W.S.A. 230.45.

Estate of Roth, 25 Wis.2d 528, 131 N.W.2d 286; In re Michaels' Estate, 26 Wis.2d 382, 132 N.W.2d 557; In re Estate of Mildred E. Gray, 27 Wis.2d 204, 133 N.W.2d 816. Expressions of opinion conflicting therewith appearing in Barbour are overruled.

■ Appellant strongly urges that Walter Wagner's statements that he wanted the account fixed so Mrs. Wagner could write checks for the business and his inquiry about changing the account back when he returned from the hospital indicates that the account was established for his convenience only and without any intention to create survivorship rights in plaintiff. Possibly this evidence permits such inference. However, this is not the only inference. Conceding that one of the purposes for changing the account was to allow her to write checks to conduct the business, it does not necessarily follow that he did not intend that plaintiff have the balance in the account in the event of death. The inquiry relative to changing the account back when he returned from the hospital, if he chose so to do, manifests knowledge that he had parted with an interest in the account which he might desire back at a later time.

The ledger sheet in the bank was not changed after the joint account agreement was signed. Neither was a new ledger sheet made out. The ledger sheet showed only the name of Walter Wagner. We consider this of no consequence. Olson testified that in many instances when the depositor had only one account, this was a customary banking practice. In the case of In re Michaels' Estate, supra, a similar situation occurred when a bank teller at the direction of the depositor added a name to a passbook for an existing account and stamped thereon "A joint and several account Payable to either or the survivor", but did not add any name on the bank ledger sheet covering the account; consequently, the bank ledger sheet named only the original depositor. The Wisconsin court disposed of this irregularity with the succinct statement: "This we deem to be immaterial because the passbook constituted the contract between the depositor and the bank; the ledger sheet was merely the private record of the bank." Here the signature card with the writing thereon set forth supra constituted the contract between the parties and the bank and the ledger sheet was only

a private record of the depository bank. See also, Equitable & Central Trust Co. v. Zdziebko, 260 Mich. 366, 244 N.W. 505.

█ Before trial the parties took the depositions of five witnesses all of whom later testified at the trial. The depositions were taken upon a stipulation that their purpose was for discovery or for use at the trial. Portions of some of the depositions were used at the trial for impeachment purposes. Plaintiff expended $106.25 for taking depositions and intervenor filed objection to allowance thereof as costs. The trial court overruled the objection stating the depositions were all material and necessary to the proper preparation and trial of the case.

Costs and disbursements shall be allowed as provided by statute. RCP 54(d). SDC 1960 Supp. 33.1814 provides in part:

"In all cases where a party is allowed to recover costs the clerk must also tax as a part of the judgment the allowance of such party's witnesses', interpreters', translators', officers', printers' fees and the necessary expense of taking depositions and procuring necessary evidence."

In State Highway Commission v. Hayes Estate, 82 S.D. 27, 140 N.W.2d 680, we modified a judgment by disallowing as taxable costs $250.28 paid for photographs used at the trial. Photographer's fees are not specifically mentioned in the statute and we held that they did not come within the term "procuring necessary evidence" set forth in the statute. "The necessary expense of taking depositions" is mentioned in the statute and the trial court determined the depositions were necessary. We find no error. Nevertheless, we believe this to be an area for use of cautious restraint within the guidelines of the statute.

Other assignments of error have been considered and determined to be without merit.

Affirmed.

HANSON, P. J., RENTTO and BIEGELMEIER, JJ., and NORBECK, Circuit Judge, concur.

NORBECK, Circuit Judge, sitting for ROBERTS, J., disqualified.