In the Matter of the **ESTATE OF Claude S. PERKINS,** Deceased.

No. 18188. .

Supreme Court of South Dakota.

Considered on Briefs Sept. 3, 1993.

Decided Nov. 24, 1993.

Thomas F. Burns, Gribbin, Burns & Eide, Watertown, for appellant Alice C. Coyle.

Thomas P. Tonner, Tonner, Tobin and King, Aberdeen, for appellee Estate.

Duane A. Thurow, Thurow, Cutler & Batteen, Aberdeen, for appellees Andrew D. Perkins, David L. Perkins & Phyllis N. Riggs.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Upon the demise of Claude S. Perkins (Perkins), his son, Mark Perkins, became executor of the Perkins estate and submitted a final account of the estate's assets on August 21, 1992. Mark's siblings, Andrew D. Perkins, David L. Perkins, and Phyllis N. Riggs (Objectors) filed an objection to the final account, claiming that the account inaccurately named their sister, Alice C. Coyle (Alice), as beneficiary of four annuity policies.

In a Judgment issued November 30, 1992, the Fifth Judicial Circuit Court held that Alice was neither beneficiary nor owner of the annuities, rather the annuities were assets of Perkins' estate to be divided equally among Perkins' children. A constructive trust over the annuities was imposed by the circuit court with Alice serving as trustee. Alice appeals, raising the following issues:

I. Can the circuit court, by virtue of objections to an executor's final report, impose a constructive trust over property titled in the name of an heir?

II. Was the evidence sufficient to support the imposition of a constructive trust?

We uphold the trial court's jurisdiction over this matter, but reverse the imposition of the constructive trust.

### FACTS

On April 4, 1990, in response to a newspaper ad, Perkins, age 82, made inquiries about tax-deferred annuities at the Norwest Bank office in Aberdeen, South Dakota. Norwest

personal banker Carol McKiver (McKiver) explained that Bankers United Life Assurance Company (Bankers United), the issuer of the annuities, does not allow the owner of an annuity policy to be the annuitant on the policy, if the owner is over the age of 79, when the policy is sold. An annuitant is the person to whom annuity payments will be made. In order to purchase an annuity, Perkins listed his daughter, Alice, as annuitant and, from the bank, phoned her in Ham Lake, Minnesota to obtain her Social Security number for the policies. Perkins did not inform Alice why he needed the number nor did he ever tell her or any of his children about the annuities.

McKiver further explained that as beneficiary, Perkins would receive the annuity payments should Alice predecease him. If, however, he were to name a "contingent owner," the contingent owner would become the owner in the event of Perkins' death. She also noted that for tax purposes, the annuities would be an asset of the estate. Thereafter, Perkins decided to name a contingent owner, and, with an ink pen, McKiver added to the pre-printed instrument: " * Contingent Owner—Alice Coyle." Perkins listed himself as beneficiary.

Over the next year, Perkins, through McKiver, purchased three more annuities, each time listing Alice as "contingent owner." When McKiver asked if Alice was to be listed as contingent owner on the third policy, Perkins supposedly remarked, "Maybe Mark but he's gone, let's put Alice on again."

Perkins died on June 14, 1991, less than three months after purchasing the third and fourth annuities. The heirs first learned of the annuities, valued at $90,000.00, when Mark, as executor of the estate, made an accounting of the estate's assets and debts. After Alice learned of her "contingent ownership," she filed a form on September 24, 1991, with Bankers United placing the policies in her name. Objectors challenged her ownership claiming that the annuities were assets of the estate. The trial court agreed with Objectors and placed the annuities in a constructive trust.

## DECISION

I. *Trial court had jurisdiction over the annuities.*

On appeal, Alice asks if the Fifth Judicial Circuit has the authority to impose a constructive trust over the annuities. This poses a jurisdictional question. She maintains there is no res in South Dakota, and any attempt to impress a constructive trust against her must be done in Minnesota, where she resides.

■ We disagree. Under SDCL 16-6-9(5), circuit courts have jurisdiction in "all matters of probate ... and settlement of estates of deceased persons[.]" The matter in question is the ownership of four annuities purchased by Claude Perkins prior to his death. This action was properly brought under SDCL 30-15-1:

> Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases and in the same courts in which the same might have been maintained by or against their respective testators or intestates.

It is undisputed that the documents have remained in South Dakota since their discovery, and the situs of investment paper is where the instrument is located. 31 Am. Jur.2d *Executors and Administrators* § 118 (1989); U.P.C. § 3-201(d). As the ownership of the annuities passed upon the death of Perkins, a South Dakota resident, and such ownership is disputed in a probate proceeding properly before South Dakota's Fifth Judicial Circuit Court, the trial court was well within its power to consider this contest to probate. Alice cannot bootstrap her argument by asserting that because she is the owner, the courts have no jurisdiction to determine if she is the owner.

■ Alice further advocates that bringing objections to the executor's final account is not the proper method of disputing title to property which the executor determined not to be estate property. We disagree. Objection by interested parties is an appropriate method to challenge the accuracy of the executor's account. *In re Estate of Omernik*, 112

Wis.2d 285, 332 N.W.2d 307 (1983). The court overseeing the probate has power to entertain a petition to require a correction of an inventory so that it will include specific property. 31 Am.Jur.2d *Executors and Administrators* § 518 (1989).

Therefore, we determine that the circuit court, in its statutory capacity to oversee disputes in probate, had jurisdiction over the ownership of the annuities. Provided sufficient evidence exists, it is well within the power of the circuit court to impose a constructive trust over disputed property.

## II. *Trial court erroneously imposed a constructive trust.*

According to the trial court's findings, Alice was listed on the annuities only as a matter of convenience, not to benefit from a gift. Perkins' supposed intent, per rationale of the trial court, was to make the policies part of his estate to be shared equally by his children upon his death. Based on these findings, the trial court placed the annuities in a constructive trust with the proceeds to be divided equally among Perkins' children. To impose such a trust, the trial court must show clear and convincing evidence that

> (1) the constructive trustee gained; (2) that gain was by fraud, accident, mistake, undue influence, violation of a trust, or other wrongful act; (3) the constructive trustee has no superior right to the thing gained; and (4) the party seeking the constructive trust would have otherwise had the thing gained.

*Rosebud Sioux Tribe v. Strain,* 432 N.W.2d 259, 264 (S.D.1988); *In re Walgamuth,* 144 B.R. 465, 474 (Bkrtcy.D.S.D.1992); SDCL § 55–1–8. The trial court, although it did not specify its decision on the above holding, indicates that Alice had no superior right to the annuities.

■ Findings of fact are presumed correct. *R & S Construction Co. v. BDL Enterprises,* 500 N.W.2d 628 (S.D.1993); *Insurance Agents, Inc. v. Zimmerman,* 381 N.W.2d 218, 219 (S.D.1986). Under the clearly erroneous standard, however, findings will be overturned if this Court is left with a definite and firm conviction that a mistake has been made. *Wolff v. Royal Ins. Co. of*

*America,* 472 N.W.2d 233 (S.D.1991); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970). "Where, as here, the decisions of the trial court do not appear to be based upon the credibility of the witnesses, and the underlying facts are uncontroverted, and no reason appears for not believing them, the scope of review becomes even broader." *Royal Business Machines v. Lorraine Corp.,* 633 F.2d 34, 47 (7th Cir.1980). Instanter, the findings of fact and conclusions of law make no reference to credibility.

■ According to the executor's final account and report of the estate, upon Perkins' death, Alice gained control of the annuities. This determination was based on the handwritten notation, added to each annuity policy by McKiver at Perkins' request, naming Alice as "contingent owner." Although this term was not defined by the contracts, the undisputed testimony of McKiver revealed that Bankers United had instructed its agents on the use of "contingent owners." McKiver further testified that the contingent owner becomes the owner of the annuities in the event of the original owner's death, and specifically made Perkins aware of this. Her uncontroverted testimony is strongly supported by the fact that Bankers United, through its sister company which pays the annuity proceeds, considers Alice to be the owner and has permitted her to withdraw funds from the annuities. We find all of the above evidence strongly indicative as to Perkins' intentions. And it certainly buttresses the cause of Alice because she is a contingent owner according to the actions of Bankers United.

Additionally, we do not find it clear and convincing that Perkins "always treated his children equally," as the trial court held in Finding of Fact No. 24. Ironically, the very objectors who made this claim also point out that Perkins refused to attend Alice's wedding and disliked her husband. One might well consider this a prime example of unequal treatment. Perkins established joint bank accounts containing over $68,000.00 for Mark, but did not do so for his other children. Perkins made "loans" available to the other children, but did not make the same

offer to Alice. He established joint tenancy accounts for Alice's daughters worth over $25,000.00.

To obtain Alice's Social Security number, Perkins made a long distance phone call to her in Minnesota. With the same ease, he could have phoned any of his local children. Finding of Fact No. 20 provides:

> That Claude S. Perkins was going to name Mark Perkins as Annuitant or Contingent owner on one of the Annuity Policies, but Mark was gone and Claude did not know Mark's Social Security number so he named Alice C. Coyle.

Although Perkins may have considered listing Mark on one of the policies, it is pure conjecture that the only reason why he did not do so was because he was unable to obtain Mark's Social Security number. It is also pure conjecture that Alice was listed again out of simplicity. Thus, such a finding shall be set aside. *Matter of B.A.M.,* 290 N.W.2d 498 (S.D.1980). It is obvious Perkins treated his children differently, which he had a right to do.

To hold that Perkins' intent was to benefit his estate, rather than a gift to Alice is clearly erroneous in light of the uncontested facts. *Mash v. Cutler,* 488 N.W.2d 642 (S.D. 1992). No clear and convincing evidence exists to contradict Alice's superior right to the annuities; thus, the trial court is ordered to dissolve the constructive trust. *Rosebud Sioux Tribe,* 432 N.W.2d at 264. Thereupon, Alice shall continue to receive the annuity payments.

Judgment reversed.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

SABERS, J., concurs in part and concurs specially in part.

SABERS, Justice (concurring in part; concurring specially in part).

I concur on Issue I and concur specially on Issue II.

This case is extremely important to the law, the people, the bench, and the bar of the State of South Dakota. It is far more important than first appears. In my view, it will have a substantial impact on the determination of ownership of monetary assets upon death. It will affect bank accounts, certificates of deposit, mutual funds, bonds, notes, and other accounts, contracts, including life insurance policies, trusts, and, as here, annuities.

As I wrote in *In re the Estate of Bol:* *

> The law in South Dakota concerning joint accounts has been stable since *Wagner v. Wagner,* 83 S.D. 565, 163 N.W.2d 339 (1968). *Wagner* properly placed the burden of challenging a joint account on the challenger to show *by clear and satisfactory evidence* that there was no intention to create the joint account.... For the purpose of stability, the *Wagner* Rule and its progeny should be extended to trust accounts.

429 N.W.2d 467, 473 (S.D.1988) (Sabers J., dissenting). Although specific statutory authority exists in cases involving joint accounts, *see In re the Estate of Kuhn,* 470 N.W.2d 248 (S.D.1991) and cases and statutes cited therein, there are no sound reasons against applying this rule in all similar cases as here, without regard to the type of account, fund, or asset involved, or manner created. Substantial compliance is sufficient. Strict formalities are not required.

As stated in *Kuhn,* "[r]ights ought not to be jeopardized by the somewhat lax methods used by the bank in transacting its business and keeping its records.... The critical inquiry is what the original depositor intended." *Id.* at 251 (citation omitted).

Here, based on the explanations of personal banker McKiver, Perkins listed his daughter, Alice, as contingent owner. As contingent owner, Alice would become the owner in the event of Perkins' death. Therefore, the intention of Perkins, the original owner, appears clear. The burden of challenging the ownership is on the challengers to show by clear and satisfactory evidence that there was no intention to create ownership in Alice. *Kuhn,* 470 N.W.2d at 250–51; *Wagner,* 83

---

\* Application of this rule to similar cases should avoid the inconsistent result of cases like *Bol.*

S.D. at 571, 163 N.W.2d at 342. These challengers have failed to show by clear and satisfactory evidence that there was no intention to create ownership in Alice. Therefore, they have failed to sustain their burden. Any findings of fact to the contrary would be clearly erroneous under *In re the Estate of* *Hobelsberger*, 85 S.D. 282, 288–89, 181 N.W.2d 455, 458–59 (1970).