Richard L. GILBERT, Plaintiff,

v.

CONSTITUTION STATE SERVICE,
COMPANY and/or The Travelers,
Defendant.

No. Civ. 4-99-CV-30046.

United States District Court,
S.D. Iowa,
Central Division.

May 26, 2000.

Jerry Jackson, West Des Moines, IA, for plaintiff.

Steven P. Wandro, Cecelia Ibson Wagner, Wandro & Associates PC, Des Moines, IA, for defendants.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WALTERS, Chief United States Magistrate Judge.

This matter is before the Court on defendant's motion for summary judgment.[1] On December 31, 1998, plaintiff Richard L. Gilbert filed the present action in the Iowa District Court in and for Polk County, alleging a state law claim of bad faith in the handling of his workers' compensation claim. Defendant Constitution State Service Company (Constitution) removed this action to federal court on the basis of diversity jurisdiction, 28 U.S.C. §§ 1332, 1441. The parties consented to proceed before a United States Magistrate Judge and the case was referred to the undersigned for all further proceedings on June 24, 1999. See 28 U.S.C. § 636(c).

Constitution filed a motion for summary judgment on February 15, 2000 which Gilbert has resisted. The matter came on for hearing on April 12, 2000. Since then the Iowa District Court for Polk County has issued a ruling on an administrative appeal from the underlying workers' compensation decision which Constitution, by supplement to its motion, contends is issue preclusive. Gilbert has filed a responsive

1. Plaintiff withdrew his cross-motion for summary judgment on May 23, 2000.

memorandum on this issue. The matter is now fully submitted.

## I.

The motion for summary judgment is subject to well-established standards which will not be set out at length. In brief, a party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990) (citing Fed. R.Civ.P. 56(c)); *accord Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." *Hartnagel,* 953 F.2d at 395 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## II.

Plaintiff Richard Gilbert is employed by USF Holland as a truck driver. USF Holland is self-insured for workers' compensation claims and retains defendant Constitution, a member of the Travelers Group, to administer workers' compensation claims.

In January 1996 Gilbert filed a workers' compensation claim after suffering neck strain while backing up his truck. Mashell Welder was the claims handler when this claim was filed. Welder found that Gilbert's January 1996 injury was work-related and, therefore, compensable. Her decision was based on the fact that truck drivers are more likely to have to turn their heads sharply and suffer neck strain as a result than are members of the general population. Gilbert was fully released to return to work shortly after that incident.

On June 4, 1997 Gilbert suffered neck pain while at work. The circumstances of that incident are somewhat in dispute. Originally Gilbert told his supervisor that he had been signing a paper on the work premises and felt his neck pop. The Workers Compensation Claim Assignment Report, which was generated after the employer reported the injury to Travelers, noted that Gilbert stated he was bending over signing a bill of lading and when he stood up he felt his neck pop. (Ex. A). There is a blank on the Claim Assignment Report to list witnesses to the incident; Gilbert listed none. (*Id.*) On June 5, 1997, Gilbert and his supervisor filled out a Supervisor Employee Injury Investigation form, on which Gilbert wrote that his injury occurred when he bent over a desk to sign a bill, then stood back up. (Ex. B). Gilbert disputes that he was asked to list witnesses on the Supervisor Employee Injury Investigation form. On or about June 12, 1997, Gilbert was fully released to return to work. His claim was assigned to Welder for handling. On June 12, Welder received Gilbert's medical records regarding the incident, which included his statement that the injury occurred when he leaned over to sign some forms at work. (Ex. C).

Although Welder claims she called Gilbert on June 12 and 13, 1997, to discuss his claim and that he did not return the calls, Gilbert claims he called and left her messages, but Welder did not call back. On June 17, 1997, Welder called Gilbert's supervisor and asked him to have Gilbert contact her. Gilbert agrees he spoke to Welder on that date. Welder asked Gilbert to once again describe what happened just prior to the onset of pain. The remainder of the conversation between Welder and Gilbert is disputed as well as how long it lasted. Gilbert called Welder

a second time that day and they discussed his case again. Welder claims she told Gilbert his injury was idiopathic which, by her definition, is one the worker is no more likely to suffer than is a member of the general population and/or those which are as likely to occur outside the workplace as within it. Constitution did pay Gilbert's medical expenses incurred in connection with the June 1997 injury. (Ex. O at 5–6). However, by a letter dated June 17, 1997, Travelers denied Gilbert's worker's compensation claim with respect to this injury. (Ex. D).

On July 12, 1997, Gilbert woke up with neck pain. He told his supervisor he wanted to go to the company doctor. No separate claim was filed by Gilbert concerning this injury.

Later in July Gilbert's attorney Jerry Jackson sent Welder a letter enclosing a statement from co-employee Robert Ray Prusia, who witnessed the incident in June 1997. Prusia claimed that Gilbert popped up a sticking dock plate, closed his trailer and then walked over to the desk where he bent over to sign his bills. Prusia then saw Gilbert grab his neck and groan. (Ex. F). In response to Jackson's request during a July 31, 1997 telephone call, Welder sent him her file on Gilbert's claim. On August 1, 1997, Jackson sent Welder a report from Dr. Thomas Carlstrom, who saw Gilbert after the July incident. Gilbert had told Dr. Carlstrom that he "pulled on" a "sticking" dock plate in June 1997. There is a dispute whether Gilbert had reported being in pain throughout June and July prior to the July 12 incident.

On August 13, 1997 attorney Jackson asked Welder to go back to the employer and ask them to reconsider the June denial. Welder did this, including with her letter of inquiry a copy of Jackson's position statement. (Ex. J). On August 26, 1997, Dr. Carlstrom released Gilbert to return to work without restrictions. (Ex. K).

On August 28, 1997, Gilbert filed a petition for workers' compensation benefits. His claim was in litigation before the Workers' Compensation Commissioner in 1997 and 1998. In a July 1998 report Dr. Carlstrom attributed Gilbert's injuries to a lifting, tugging work injury on the 4th of June. (Ex. L). In August 1998 Dr. Carlstrom authored a letter in which he stated that Gilbert "experienced significant deterioration of his symptoms after a July at home activity." (Ex. M). Constitution continued to deny Gilbert's claim.

Welder has stated in an affidavit that she found the statement by co-worker Prusia to be inconsistent with what Gilbert had told her; that coupled with its generation after Gilbert had been advised why his claim was being denied led Welder to continue to question whether the June and July incidents were compensable claims. (Welder Affidavit). Welder states that if she had been told initially about the pulling/tugging incident, this case might have gone differently.

As a result of an arbitration decision by a Deputy Workers' Compensation Commissioner in December 1998, Constitution and the employer were ordered to pay Gilbert over $62,000 in workers' compensation benefits. (Ex. 2). Constitution appealed the decision of the Deputy Commissioner to the Workers' Compensation Commissioner.[2] On November 29, 1999, the Commissioner reduced the award to about $17,000 in workers' compensation benefits. Both the Deputy Commissioner and the Commissioner awarded penalty benefits under Iowa Code § 86.13 based on a finding that continued denial of plaintiff's claim for healing period benefits after receipt of reports from two physicians was not fairly debatable and unreasonable.[3]

2. Neither party has cited the Court to the decision of the Workers' Compensation Commissioner, but it is available through the Iowa Bar Association's website.

3. Dr. Carlstrom's reports and Gilbert's full return to work led both the Deputy and the Commissioner to conclude that the issue of

Both sides appealed the Commissioner's decision to the Iowa District Court.

In a ruling entered May 5, 2000, the court found:

> ... Petitioner provided a history about how the June 4, 1997, incident occurred. He provided it not once, but three separate times. Then Petitioner's workers' compensation claim was denied. After that he changed his history. It defies logic to suggest that this "abrupt change in facts" should now preclude the Respondents from disputing the work relatedness of the claim. The Commissioner's decision awarding penalty benefits was in error and, must be reversed.

*Gilbert v. USF Holland, Inc. and Constitution State Service Company,* ACCL AA 3385, Ruling at 9 (Iowa Dist.Ct. Polk Co. May 5, 2000). Plaintiff is planning to appeal the district court's ruling. Both sides have supplemented their motion papers in light of the district court's ruling, with Constitution now claiming the ruling is issue preclusive on a key element of the bad faith claim in this Court. Trial is set for June 5, 2000. At a status conference on May 22, 2000 both sides asked the Court to rule on the pending motion rather than delay during the underlying appeal.

## III.

### A. *Bad Faith*

■ The Iowa Supreme Court has recognized a cause of action against workers' compensation insurers for the reckless or willful disregard of the obligation to pay benefits. *Boylan v. American Motorists Ins. Co.,* 489 N.W.2d 742, 743–44 (Iowa 1992). In *Boylan* the court adopted the principles and standard of liability for first-party insurance bad faith which the Supreme Court had several years before applied in *Dolan v. Aid Insurance Co.,* 431

N.W.2d 790, 794 (Iowa 1988). To prove a claim of bad faith failure to pay insurance benefits, plaintiff must prove "(1) absence of a reasonable basis for denying benefits under the policy," *Brown v. Liberty Mut. Ins. Co.,* 513 N.W.2d 762, 763 (Iowa 1994) (citing *Dolan,* 431 N.W.2d at 794) and (2) that the insurer "knew or had reason to know that its denial was without a reasonable basis." *Thompson v. U.S. Fidelity & Guaranty Co.,* 559 N.W.2d 288, 291 (Iowa 1997) (citing *Morgan v. American Family Mut. Ins. Co.,* 534 N.W.2d 92, 96 (Iowa 1995) and *Kiner v. Reliance Ins. Co.,* 463 N.W.2d 9, 13 (Iowa 1990)). A reasonable basis to deny a claim exists when a claim is "fairly debatable." *Wetherbee v. Economy Fire & Cas. Co.,* 508 N.W.2d 657, 662 (Iowa 1993) (citing *Reuter v. State Farm Mut. Auto. Ins. Co.,* 469 N.W.2d 250, 253 (Iowa 1991)). "[L]ack of proper investigation and evaluation is significant in proving ... knowledge by the insurer of the lack of a debatable reason for denial." *Reuter,* 469 N.W.2d at 253. The sufficiency of evidence to generate a jury issue on bad faith is a legal issue. *Thompson,* 559 N.W.2d at 291.

### B. *State Statutory Penalties for Delay in Payment*

The Iowa Workers' Compensation Commissioner[4] administers Iowa laws pertaining to workers' compensation. Iowa Code § 84A.5(4). In addition to an award of benefits, the Commissioner is authorized to award penalty benefits "[i]f a delay in commencement ... of benefits occurs without reasonable or probable cause or excuse," in an amount "up to fifty percent of the amount of benefits that were unreasonably delayed or denied." Iowa Code § 86.13, unnumbered ¶ 4. The burden is on the defendant employer/insurer to prove reasonable cause or excuse, *i.e.* that the

permanent disability benefits was fairly debatable.

**4.** Previously the Commissioner was known as the Iowa Industrial Commissioner. In 1998,

that title was amended by the legislature to that of Iowa Workers' Compensation Commissioner. 1998 Iowa Acts (77 G.A.), ch. 1061, § 11.

employer or insurer had a reasonable basis to contest an employee's entitlement to benefits. *Christensen v. Snap–On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996).[5] A "reasonable basis" exists if a claim is "fairly debatable." *Id. Christensen* makes clear that in this regard the standard for penalty benefits is the same as, and derived from, the first element of the tort of bad faith failure to pay benefits with the burden reversed. *Id.* The *Christensen* court further held that an award of statutory penalty benefits does not require proof of the second element of a bad faith claim: "the insurer's 'knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.'" *Id.* (quoting *Dolan*, 431 N.W.2d at 794).

## C. *Issue Preclusion*

In reversing the Commissioner on the issue of penalty benefits the Iowa District Court essentially held Constitution had established as a matter of law that the work-relatedness of plaintiff's claim was fairly debatable. "Federal courts must give state court judgments the same preclusive effect as would a court of the state in which the judgment was entered...." *North Star Steel Co. v. MidAmerican Energy Holdings Co.*, 184 F.3d 732, 737 (8th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 580, 145 L.Ed.2d 482 (1999) (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)); *see Canal Capital Corp. v. Valley Pride Pack, Inc.*, 169 F.3d 508, 513 (8th Cir.1999) (a diversity case); *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1066 (8th Cir.1997). Iowa state courts base determinations of the preclusive effect to be given state agency findings on whether the agency " 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *Plough By and Through Plough v. West Des Moines Comm. School Dist.*, 70 F.3d 512, 515 (8th Cir.1995) (quoting *University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (quoting in turn *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966))); *see Board of Supervisors, Carroll County v. Chicago & North Western Trans. Co.*, 260 N.W.2d 813, 815 (Iowa 1977). "Under Iowa law, the 'action of any agency falls within the general adjudication category when it determines the rights, duties and obligations of specific individuals as created by past transactions or occurrences.'" *Plough*, 70 F.3d at 515 n. 7.

There can be no doubt that the agency was acting in a judicial capacity in determining plaintiff's workers' compensation claim. The Commissioner's ruling resulted from an adversary proceeding governed by rules which are similar to those pertaining to judicial proceedings. *See generally* Iowa Admin.Code § 876—ch. 4. In fact, the Iowa Rules of Civil Procedure are applicable to workers' compensation proceedings except when in conflict with statute. *Id.* § 876–4.35(86). An evidentiary hearing was held before a Deputy Commissioner at which the parties had an opportunity to present evidence. Both sides availed themselves of the opportunity to appeal the Deputy Commissioner's decision to the Commissioner, and to seek judicial review by the Iowa District Court. *See* Iowa Code § 17A.19. In an administrative appeal the Iowa District Court sits in an appellate capacity to correct errors of law and pass on the sufficiency of the evidence under the substantial evidence standard. *Robbennolt v. Snap–On Tools Corp.*, 555 N.W.2d 229, 233 (Iowa 1996). In identical circumstances, the Iowa Supreme Court has said: "decisions made through [the workers' compensation] administrative process that are relevant to the issues in the bad faith action will, in many instances, carry preclusive ef-

---

5. The insurer may also prove that delay was necessary for the insurer to complete its in-vestigation of the claim, a matter not in issue in this case. *Christensen,* 554 N.W.2d at 260.

fect...." *Reedy v. White Consol. Indus., Inc.,* 503 N.W.2d 601, 603 (Iowa 1993).

■ Under Iowa law there are four prerequisites for issue preclusion: "(1) The issue concluded must be identical; (2) The issue must have been raised and litigated in the prior action; (3) The issue must have been material and relevant to the disposition of the prior action; and (4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment." *Brown v. Kassouf,* 558 N.W.2d 161, 163 (Iowa 1997) (quoting *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981)); *see North Star Steel Co.,* 184 F.3d at 737. The issue in the underlying workers' compensation case and in the present case is identical: the presence or absence of a reasonable basis to deny benefits. *Supra* at 786. The issue was raised and litigated in the workers' compensation case, was material and relevant to its disposition with respect to penalty benefits, and was necessary and essential to the resulting judgment.

In contesting issue preclusion, Gilbert relies on two subparagraphs of section 28 of Restatement (Second) of Judgments (hereinafter "Restatement") which the Iowa Supreme Court has adopted. *See Heidemann v. Sweitzer,* 375 N.W.2d 665, 668 (Iowa 1985).

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: .... (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; *the bur-*

*den has shifted to his adversary;* or the adversary has a significantly heavier burden than he had in the first action; ... (emphasis added).

While plaintiff cites subparagraph (3) he does not identify any differences in the quality or extensiveness of the procedures between the two fora which would make redetermination appropriate, or relevant factors relating to the allocation of jurisdiction. As noted, the agency's procedures are comparable to those in a court and plaintiff has had an opportunity for judicial review by the Iowa District Court. Gilbert does not contend he was prohibited from fully and fairly presenting the "fairly debatable" issue before the Commissioner. The state system for the determination of workers' compensation claims, and state courts, have greater expertise in assessing the work-relatedness of injuries than this Court. No "unusual competency" in the subject matter or any other factor favors jurisdiction in this Court. *Heidemann,* 375 N.W.2d at 668 (quoting Vestal, *Preclusion/Res Judicata Variables: Adjudicating Bodies,* 54 Geo.L.J. 857, 886–7 (1966)).

The burden allocation provision in subparagraph (4) also does not require redetermination. The burden of proof has shifted in this case but from, not to the adversary. Constitution had the burden to prove the claim was fairly debatable in the workers' compensation case. Gilbert has the burden of proof now as an element of his bad faith claim. Had the Iowa District Court affirmed the Commissioner's finding of penalty benefits, and Constitution raised the exception in contesting issue preclusion, the exception would apply because the burden has shifted to Gilbert.

■ As it stands now Gilbert is precluded from relitigating the determination of the Iowa District Court that his worker's compensation claim was fairly debatable with respect to work-relatedness. Because that ruling adversely determined an essential element of Gilbert's claim of bad

faith failure to pay benefits, Constitution is entitled to summary judgment.

The Court has decided to grant the motion only conditionally and to stay entry of judgment. In the status conference with counsel following the Iowa District Court's ruling, Gilbert's counsel stated an intent to appeal the ruling. Though such an appeal would not affect the finality of the state court judgment, Iowa R.App.P. 7(c), this Court is reluctant to make a final decision until any appeal is concluded for three reasons. First, a full opportunity to litigate includes the right to appeal an adverse decision. *See Mandich v. Watters,* 970 F.2d 462, 465 (8th Cir.1992) (citing *Gray v. Lacke,* 885 F.2d 399, 406 (7th Cir.1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990)). Gilbert should have an opportunity to contest the adverse decision on appeal before his bad faith claim is dismissed on the ground of issue preclusion. Second, this course is consistent with the discretionary abstention policy favored by the Iowa courts when related workers' compensation and bad-faith tort claims track together. *Reedy,* 503 N.W.2d at 603. Third, entry of a judgment of dismissal now would require plaintiff to file a protective appeal with the Eighth Circuit in order to preserve his cause of action, an unnecessary waste of time and effort at this point.

Constitution would like the Court to pass beyond issue preclusion to join the Iowa District Court in finding the claim was fairly debatable on the basis of the summary judgment record. The Court declines to do so. If relitigation is precluded, it is precluded. Moreover, should an appeal result in a reversal of the Iowa District Court's ruling, the appellate court's opinion will probably be helpful in assessing Constitution's motion on the merits.

Defendant's motion for summary judgment conditionally granted. Entry of judgment and all proceedings in this case are stayed until determination of the appeal by issuance of procedendo in the underlying state workers' compensation judicial review action, or the time for appeal has run without appeal being taken, whichever first occurs. If the judgment of the Iowa District Court is affirmed then judgment in favor of defendant and dismissing the Complaint will be entered by separate order in this cause. If the judgment is reversed, the Court will undertake such further proceedings as appear appropriate in the premises.

Counsel shall advise the Court within ten (10) days after the appeal is concluded, or the time for taking appeal has run, of the status of state court proceedings.

Trial of this cause now set for June 5, 2000, is continued until further order.

IT IS SO ORDERED.