#24768-a-RWS

**2008 SD 97**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

In the Matter of the Estate of
JOSEPH E. OLSON,

ROGER D. OLSON, Personal Representative
of the Estate of JOSEPH E. OLSON, MARLYS
SIDES, KENWOOD OLSON, ROGER OLSON,
NONA FOSTER, LINDA TORGRUDE and
RICKY OLSON,                                          Plaintiffs and Appellants,

   v.

NORA OLSON, a/k/a NORA A. OLSON,
and CITIZENS STATE BANK, Sinai,
South Dakota Branch,                                 Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge

\* \* \* \*

JEROME B. LAMMERS of
Lammers, Kleibacker & Brown, LLP
Madison, South Dakota                            Attorneys for plaintiffs
                                                 and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 26, 2008

OPINION FILED **10/15/08**

GARY J. PASHBY  
MICHAEL F. TOBIN of  
Boyce, Greenfield, Pashby & Welk, LLP  
Sioux Falls, South Dakota

ALAN F. GLOVER of  
Glover & Helsper, PC  
Brookings, South Dakota

Attorneys for appellee  
Citizens Bank.

Attorneys for appellee  
Nora Olson.

#24768

SABERS, Justice

[¶1.]        At the time of Joseph E. Olson's ("Joe") death, ten certificates of deposit ("CDs") he purchased were held in joint ownership with his wife, Nora A. Olson ("Nora"). Joe's six children from a previous marriage claim that Joe intended the CDs' proceeds to go to them, rather than to Nora, upon Joe's death. The circuit court held: (1) Nora was a joint tenant with rights of survivorship to the CDs. We affirm Issue 1. (2) The court further held that Joe's children were not permitted money damages due to their failure to request them in their complaint. In addition, the complaint does not contain a claim against the Bank for negligence or any other cause of action. Despite an opportunity to amend the complaint, the opportunity was declined by Joe's children. For these reasons, we also affirm Issue 2.

## FACTS

[¶2.]        Joe and Nora were married in May of 1985.[1] This was the second marriage for each of them and each had six children from their prior marriages. Joe and Nora had a very good marriage, and they worked "hand in hand." After twenty-one years of marriage, Joe died on June 3, 2006.

---

1.    Joe and Nora had a prenuptial agreement dated May 16, 1985. This agreement recited that Joe and Nora's separately owned property would not automatically become marital property after marriage. To purchase these CDs, Joe placed the proceeds received from selling his separately owned property into a joint checking account he held with Nora. Joe and Nora also had wills drawn up on October 28, 1997. Joe's will acknowledged the prenuptial agreement, and devised Joe's household and antique furniture to Nora, with a few exceptions for his children. The prenuptial agreement and Joe's will do not change the outcome of this case.

-1-

#24768

[¶3.] Beginning in 1997 and over the next four and a half years, Joe purchased ten CDs from the Citizens State Bank, Sinai, South Dakota, Branch (f/k/a First Bank of Sinai) ("Bank"). The first nine CDs were in the amount of $5,000 each, and the tenth one was for $10,000.[2] Initially, the first nine were issued to "Joseph E. Olson or Nora A. Olson" and required only one endorsement. The tenth CD was issued solely to "Joseph E. Olson" and similarly required one endorsement. This CD contained a payable on death provision naming Joe's daughter, Linda Torgrude, as the beneficiary.

[¶4.] On February 15, 2003, Joe and two of his children went to the Bank to make changes to the CDs. Joe informed the Bank officer of his intent to establish individual ownership of the CDs. Nora's name was stricken from the ownership portion of the CDs, and Joe's children were named as the beneficiaries in the payable on death provisions. These changes were made to both the original CDs and to the Bank's copies of the CDs. Joe signed a notarized document detailing his intent to make these changes. The originals were placed in a new safety deposit box Joe opened at the Bank. Joe's children were given the keys to this box.

[¶5.] On December 8, 2003, Joe returned to the Bank with Nora and one of her daughters to again change the CDs. This time the changes consisted of reinstating Nora's joint ownership to the first nine CDs and to add her name to the tenth CD originally issued in Joe's name. Joe informed Bank officer William Buck that he intended the CDs to be survivorship documents with Nora. Upon signing a

---

2.     As of the date of trial, the ten CDs totaled $78,504.82 in value with accrued interest.

document evidencing this intent, the CDs were changed to indicate ownership as "Joseph E. Olson and Nora A. Olson." Because Joe's children had possession of the key to the safety deposit box containing the originals, these changes were made only to the Bank's copies of the CDs.[3] In light of these changes, Buck did not alter the requirement of one endorsement for each CD. Moreover, the CDs were left as individual accounts rather than changed to joint accounts, and the payable on death provisions naming Joe's children as beneficiaries were not deleted.

[¶6.] In early February 2004, Joe and two of his children consulted with their attorney, Richard Ericsson. Ericsson urged Joe to return to the Bank and request the CDs be changed by once again removing Nora's name as a joint owner. Joe and another son returned to the Bank on February 9, 2004, and again met with Buck. Joe requested that Nora's name be removed from the CDs. Buck refused to make any further changes upon recognizing the tug-of-war that was occurring. Buck told Joe and Joe's son that Buck first wanted to consult with the Bank's attorney, because he believed that Nora's endorsement was necessary since the CDs ownership was now titled as "Joseph E. Olson and Nora A. Olson."

[¶7.] On February 19, 2004, the attorneys for Joe and his children, Nora and her children, and the Bank entered into an agreement that the CDs would remain in their current state reflecting the joint ownership, until there was an agreement

---

3.    According to the testimony of the Bank officers, the Bank's copies of the CDs were paramount to any other document, including the original CDs; therefore, it was important only that the requested changes were accurately reflected on the Bank's copies.

by all the parties or a court ordered otherwise. By letter, Ericsson informed Joe's children of this agreement to maintain the status quo.

[¶8.] Throughout the year and a half following the agreement, the parties attempted to resolve their disputes. Their efforts were unsuccessful. The Olson family became frustrated with attorney Ericsson, and engaged attorney Jerome Lammers to represent them. Lammers contacted the Bank to have the CDs reflect Joe's sole ownership. The Bank refused Lammers' oral request, as well as Joe's request when he visited the Bank again with two of his children in July of 2005. More than two years passed between the date of the agreement and Joe's death on June 3, 2006. At Joe's death, the agreement was still in place and the CDs remained jointly owned with Nora.

[¶9.] On August 21, 2006, Joe's children commenced this declaratory judgment action seeking a declaration of the ownership of the ten certificates of deposit. All the parties filed motions for summary judgment, which were denied. The case was tried on November 1, 2007. In its December 4, 2007 memorandum decision, the circuit court held that Joe intended to create joint ownership of the CDs with Nora, and she was entitled to the proceeds from the CDs. The court further refused to award Joe's children money damages from the Bank due to the children's failure to request money damages in their complaint. Joe's children appeal raising the following issues:

> 1. Whether the circuit court was clearly erroneous in holding that Joe's children failed to meet their burden of proving by clear and convincing evidence that Joe did not intend to establish joint tenancies with rights of survivorship.

2.  Whether the Bank was liable for negligence in failing to honor Joe's intentions.

## STANDARD OF REVIEW

We review the circuit court's findings of fact under the clearly erroneous standard.  Under this standard we will only reverse when we "are left with a definite and firm conviction that a mistake has been made" after a thorough review of the evidence.  We review conclusions of law under the de novo standard without deference to the circuit court.

In applying the clearly erroneous standard, our function is not to decide factual issues de novo.  The question is not whether this Court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed.  This Court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence.  Doubts about whether the evidence supports the court's findings of fact are to be resolved in favor of the successful party's "version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action."

Osman v. Karlen and Associates, 2008 SD 16, ¶15, 746 NW2d 437, 442-43 (quoting Fin-Ag, Inc. v. Feldman Bros., 2007 SD 105, ¶19, 740 NW2d 857, 862-63 (additional citation omitted)).

[¶10.]   **1.   Whether the circuit court was clearly erroneous in holding that Joe's children failed to meet their burden of proving by clear and convincing evidence that Joe did not intend to establish joint tenancies with rights of survivorship.**

[¶11.]   SDCL 29A-6-101(4) (2004) defines a "joint account" as "any account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship[.]"  In determining whether a joint account exists, however, the intent of the original depositor is paramount.  Matter of Estate of Steed, 521 NW2d 675, 678 (SD 1994); Farmers State Bank of Winner v. Westrum,

341 NW2d 631, 634 (SD 1983) (citing Wagner v. Wagner, 83 SD 565, 571, 163 NW2d 339, 342 (1968)).  Moreover, there is a rebuttable presumption that an account with more than one owner has rights of survivorship.  *Steed*, 521 NW2d at 678; Estate of Kuhn, 470 NW2d 248, 250 (SD 1991); *Wagner*, 83 SD at 571, 163 NW2d at 342.  "The principle is the same whether the asset is a bank account or a C.D." *Kuhn*, 470 NW2d at 250 (citing Estate of Pfeifer, 85 NW2d 370, 372 (Wis 1957); SDCL 51A-10-1).  Thus, any "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." SDCL 29A-6-104 (2004).  In fact,

> The presumption that an asset held in joint tenancy passes to the second party upon the death of the first can be rebutted only by a showing with clear and convincing evidence that the original depositor or purchaser did not intend rights of survivorship to attach to the joint asset, but merely intended the arrangement for her own convenience.

*Kuhn*, 470 NW2d at 250 (citing Roth v. Pier, 309 NW2d 815, 816 (SD 1981); Kirsch v. First Nat'l Bank of Watertown, 298 NW2d 71, 72 (SD 1980); *Wagner*, 83 SD at 571, 163 NW2d at 342).

[¶12.]    The first nine CDs purchased by Joe were issued to "Joseph E. Olson or Nora A. Olson."  On the documentation, they were designated as joint accounts with survivorship.  The tenth CD was issued solely in Joe's name, with his daughter Linda Torgrude named as the beneficiary upon death.  Subsequently on February 15, 2003, Nora's name was stricken from the first nine CDs, the account status was changed from a joint account to an individual account, and Joe's children were added as POD beneficiaries.  Nearly ten months later on December 8, 2003,

however, Joe returned to the Bank and essentially reversed all of these changes by having the Bank officer affix "and Nora Olson" to not only the first nine CDs, but also to the tenth one. Joe intended to reinstate Nora's joint ownership of the first nine CDs, and also to convert the tenth CD from an individual account into a joint account in accordance with his signed statement of intention to add "and Nora Olson" to all ten CDs. These were the final changes made to the Bank's copies of the CDs before Joe's death. The circuit court found that these changes indicate Joe's desire to jointly own the CDs with Nora.

[¶13.] A party's intention will not be absolved by the failure to strictly comply with the formalities involved in creating a joint account. *See Farmers State Bank of Winner*, 341 NW2d at 633-34 (affirming Karlen v. Karlen, 89 SD 523, 534, 235 NW2d 269, 275 (1975)). In fact, this Court has held that one's "'[r]ights ought not to be jeopardized by the somewhat lax methods used by the bank in transacting its business and keeping its records.'" *Id.* (quoting *Karlen*, 89 SD at 534, 235 NW2d at 275 (quoting Equitable & Central Trust Co. v. Zdziebko, 244 NW 505, 507 (Mich 1932))). At the December 2003 visit to the Bank, the individual account status boxes were not changed back to indicate the reinstated joint account status. Furthermore, the beneficiaries' names listed in the POD provisions were not deleted. However, adding "and Nora Olson" to the issuance line of each CD implies that the previously individually-held account is now a joint account and, along those same lines, that upon the death of the joint owner, the surviving spouse will accede to full ownership of the account regardless of the POD provision. This is especially evident when considering Joe's signed and witnessed statement of intention: "I,

Joseph E. Olson, want the Certificate[s] of Deposit[ ] that I have with [the Bank], changed to Joseph E. Olson and Nora A. Olson." Joe's intent is clear and convincing. Therefore, failure to check the boxes indicating joint accounts and failure to delete the POD beneficiaries did not preclude the validity of the joint accounts with rights of survivorship in Nora, the sole surviving joint account holder.

[¶14.] When Joe and his son Kenwood returned to the Bank in February 2004 to remove Nora's name from the CDs a second time, the Bank officer would not allow the changes for two reasons. First, because the ownership of the CDs was designated as "Joe **and** Nora Olson," the Bank officer notified Joe that Nora's signature was necessary before making any changes. (Emphasis added). The circuit court impliedly held that this was a reasonable precaution given that it found Nora to be a joint owner of the CDs.

[¶15.] Secondly, the Bank realized the influence both sides were inflicting upon Joe in this tug-of-war over the CDs. Thus, the Bank informed Joe that it would not make any revisions until the Bank had a chance to consult with its counsel. Shortly thereafter, counsel for all parties entered into the agreement that the CDs would remain in the ownership of Joe and Nora, unless there was an agreement by all the parties or a court order otherwise. Joe's children were informed of this agreement in a letter from their attorney. This agreement to freeze the status of the CDs was dated February 19, 2004. Joe died on June 3, 2006. During this time, the parties attempted to settle their differences, but in the two years before Joe's death there was no suit filed to challenge the agreement or to obtain a court order to change the ownership of the CDs. There was time to force

the issue or bring an appropriate suit if Joe had that desire. Failure to act by Joe and his children during his lifetime caused the CDs to remain in joint ownership at the time of Joe's death, resulting in Nora's full ownership of the CDs in accordance with her rights of survivorship.

[¶16.]    There is some evidence in the record suggesting that Joe may have intended to change the ownership status of the CDs during the final years of his life. However, that is not the test. Nora and her children do not have the burden of proving with clear and convincing evidence that Joe intended the joint account he created to have rights of survivorship. Rather, it is Joe's children who must carry that burden by proving that Joe did *not* intend the rights of survivorship to attach to the account. The court was not clearly erroneous in finding that Joe's children failed to meet this burden. Accordingly, we affirm.

[¶17.]    **2.    Whether the Bank was liable for negligence in failing to honor Joe's intentions.**

[¶18.]    The circuit court held that Joe's children could not be granted money damages due to the children's failure to request them in their complaint. Furthermore, in their complaint, Joe's children never claimed that the Bank was even liable for negligence. The only relief Joe's children prayed for was a "declaration of rights and responsibilities as to all parties herein pertaining to the ownership of said certificates of deposit . . . ."

[¶19.]    The complaint was filed on July 21, 2006. Subsequently, all parties filed Motions for Summary Judgment. In their motion, Joe's children argued in the alternative that:

> [I]f the Court should find in favor of Nora . . . summary
> judgment should be awarded to Plaintiffs against the Bank for
> the full amount of all CDs plus accrued interest, due to the
> Bank's wrongful refusal to permit Joe to change the CDs back
> into his own name alone, payable on death to his children . . . .

In the circuit court's June 7, 2007 decision denying summary judgment to all parties, the court specifically stated, "The bank also states that Plaintiff should not be allowed to claim damages against the bank. Presently the Plaintiff is not making a specific damage claim against the bank, and to determine whether or not an amendment, if requested, would be allowed is premature." On June 22, 2007, Joe's children sent the Bank a letter with a proposed amended complaint. However, on July 6, 2007, attorney Lammers sent the Bank's attorney a letter stating:

> Pursuant to our telephone conversation on June 29, and
> responding to your letter of July 2, please be advised that after a
> discussion with our client, we have decided that we will not
> serve and file an amended complaint. We will simply proceed on
> the pleadings as they now exist.

The reason the complaint was not amended has not been explained. The record is clear that the summary judgment decision provided Joe's children with notice that their complaint failed to request money damages, and there is evidence that amending the complaint was considered. Ultimately, however, no amendment was filed or served. Now, Joe's children are appealing the issue after the circuit court refused to award money damages when the complaint failed to request them.

[¶20.] It is established law in South Dakota that "[c]ivil actions founded on negligence or fraud require damages as an essential element." Kobbeman v. Oleson, 1998 SD 20, ¶6, 574 NW2d 633, 635 (citing Lien v. McGladrey & Pullen, 509 NW2d 421, 423 (SD 1993) (additional citations omitted)). Furthermore, "South Dakota law

requires that damages be pled with reasonable certainty." United Fire & Cas. Co. v. P & C Ins. Servs., Inc., 488 NW2d 661, 666 (SD 1992) (citations omitted). Here, Joe's children provided no indication in their declaratory judgment pleadings that they would be suing the Bank for negligence or any other cause of action, or requesting damages if the Bank was deemed liable. Due to not pleading their damages with reasonable certainty or amending their complaint in this declaratory judgment action to include a request for money damages, negligence, or other cause of action, Joe's children are precluded from raising the issue on appeal. Accordingly, the circuit court is affirmed for all of these reasons.

[¶21.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.