Jeffrey D. DAVIDSON, Appellant,

v.

David BRUCE and Estate of Keith Bruce, d/b/a Bruce Feedlot and Wausau Insurance Companies, Appellees.

No. 97–1895.

Court of Appeals of Iowa.

March 31, 1999.

Matthew A. Grotnes of Hopkins & Huebner, P.C., Des Moines, for appellees.

Heard by HUITINK, P.J., and VOGEL and ZIMMER, JJ.

VOGEL, J.

Jeffrey Davidson appeals the district court ruling entered on his petition for judicial review of a decision by the Industrial Commissioner on his claim for worker's compensation benefits. We affirm.

***Background facts.*** In 1986, Davidson was hired to perform manual labor in a cattle feeding operation known as Bruce Feed Lot. On October 29, 1990, Davidson was loading cattle into a trailer when he was kicked and knocked unconscious. He suffered a comminuted fracture to his left arm and underwent six surgeries to repair the damage, clean and irrigate infections, and release a trapped nerve. Davidson returned to work full-time on July 19, 1991. On November 11, 1992, Davidson's doctor, Dr. Ronald Miller, determined that Davidson had reached maximum healing.

On February 8, 1993, Wausau Insurance Companies, Bruce Feed Lot's workers' compensation carrier, wrote to Dr. Miller requesting a disability rating for Davidson. On February 22, 1993, Dr. Miller informed Wausau that Davidson's permanent impairment was 25% of the left arm. Using this rating, Wausau calculated that Davidson was entitled to 62½ weeks of disability at a rate of $263.46 per week, or $16,466.25. Davidson received his first permanent partial disability payment on March 18, 1993.[1]

Davidson filed a petition before the industrial commissioner on January 11, 1995. A deputy industrial commissioner awarded Davidson only what Wausau had already paid and ordered him to pay the costs of

Mark S. Soldat, Algona, for appellant.

---

1. Wausau had already paid Davidson $6,097.25 in temporary total disability from October 30, 1990 through April 9, 1991 for 23½ weeks; and $477.97 in temporary partial disability from April 10, 1991 through May 5, 1991 for 2 ⅔ weeks.

the action. Davidson appealed. The Industrial Commissioner imposed penalties upon Wausau for delays in payment and taxed costs to Wausau, but otherwise adopted the deputy's decision. Upon rehearing, the Commissioner modified her order to clarify a number of points, awarded Davidson an additional $255.67 in temporary partial disability benefits and penalized Wausau for the underpayment.

Davidson then petitioned for judicial review. The district court affirmed in part, and reversed and remanded in part. Davidson now appeals.

■ **Scope of review.** We review district court decisions regarding the validity of agency actions for correction of errors at law. *U.S. West Communications, Inc. v. Overholser,* 566 N.W.2d 873, 875 (Iowa 1997) (citations omitted). In determining whether the law has been correctly applied, we give weight to the Commissioner's interpretation of the relevant statutory provisions, but are not bound by it. *See Second Injury Fund v. Klebs,* 539 N.W.2d 178, 180 (Iowa 1995). We are bound by the Commissioner's factual findings if they are supported by substantial evidence in the record. *See Id.*

■ **I. Impairment rating.** Davidson first contends the district court erred in affirming the Commissioner's determination that he was not entitled to permanent partial disability benefits at an increased rating. He asserts the Commissioner merely accepted the rating given by Dr. Miller based on the *A.M.A. Guides to the Evaluation of Permanent Impairment* and ignored relevant lay testimony.

■ Iowa Code section 85.34 provides for permanent partial disability compensation for the loss of a scheduled member. The Commissioner is required to consider both medical and nonmedical evidence. *See Miller v. Lauridsen Foods, Inc.,* 525 N.W.2d 417, 421 (Iowa 1994). Lay testimony can buttress the medical testimony and be relevant and material in determining the cause and extent of an employee's injuries. *See Id.* When relying on medical evidence, the Commissioner may use the A.M.A. Guides for determining the disability of a scheduled member. *See Sherman v. Pella Corp.,* 576 N.W.2d 312, 322 (Iowa 1998) (citing Iowa Admin. Code r. 343–2.4).

■ Dr. Miller was the only medical expert who testified at Davidson's hearing. Davidson did not present any additional expert medical evidence, but instead called five lay witnesses to testify as to the extent of his impairment. In her ruling, the Commissioner noted that each of the lay witnesses was related to Davidson and found that none of their testimony was "particularly persuasive." She concluded:

> Dr. Miller has determined that claimant has a 25 percent impairment rating per the AMA Guides to the Evaluation of Permanent Impairment. His rating did not consider the pain that claimant was in but did include loss of range of motion, severity of the fracture, muscle atrophy, and the radial nerve injury. After considering all of the lay evidence, the undersigned has concluded that the best and most accurate evaluation of the loss of use or impairment of claimant's arm has been provided by Dr. Miller, claimant's primary treating physician. Claimant is currently able to use his arm to do all of the functions of his job which is as strenuous as the job he was performing at the time of his injury.

We find no legal error in the Commissioner's application of the law as she *considered* all relevant evidence, both lay and expert testimony, in determining Davidson's impairment. The weight the Commissioner gave to the testimony was incorporated into the findings. In our review, the question is not whether the evidence supports a finding different from the commissioner's but whether the evidence sup-

ports the findings the commissioner actually made. *See Long v. Roberts Dairy Co.*, 528 N.W.2d 122, 123 (Iowa 1995) (citing *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 237 (Iowa 1981)). The commissioner's findings are binding on appeal unless a contrary result is compelled as a matter of law. *See Id.* After reviewing the record, we conclude that substantial evidence supports the impairment rating as determined by the Commissioner.

■ *II. Interest.* Davidson next contends that the district court erred in affirming the Commissioner's determination that interest under Iowa Code section 85.30 is not compounded into principal.

Iowa Code section 85.30 provides that:

> Compensation payments shall be made each week beginning on the eleventh day after the injury, and each week thereafter during the period for which compensation is payable, and if not paid when due, there shall be added to the weekly compensation payments, interest at the rate provided in section 535.3 for court judgments and decrees.[2]

■ Davidson urges that section 85.30 must be interpreted to allow compounded interest on past due compensation payments. We disagree with this interpretation. "The general rule in the United States is that, when interest is allowable, it is to be computed on a simple rather than a compound basis in the absence of express authorization to the contrary." *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 896 (Iowa 1990). We therefore affirm the district court and Industrial Commissioner's determination of this issue.

■ *III. Penalties.* Davidson asserts the district court erred in ruling on several penalty issues.

*a. Section 86.13 penalty benefits.* The Industrial Commissioner originally

awarded Davidson a penalty of "25 percent of the permanent partial disability benefits accruing between November 11, 1992 and February 22, 1993," and a penalty of "10 percent of the permanent partial disability benefits accruing between February 22, 1993 and March 8, 1993." In its application for rehearing, Davidson pointed out that there were no benefits "accruing" during those periods; rather, the payments had already accrued and were in fact overdue. After rehearing, the Commissioner changed her order to award Davidson "25 percent of the benefits that should have been paid to claimant during the three month unexcused delay," and "10 percent of the benefits that should have been paid to claimant during the three week unexcused delay."

The district court interpreted this language to mean that Davidson should receive a percentage of the benefits that should have been paid during those specified periods (25% × weekly rate × 12 weeks + 10% × weekly rate × 3 weeks). Davidson contends that the district court erred in its interpretation and/or in not remanding the issue to the commissioner for further clarification. Davidson argues that he should have been awarded as a penalty 25% plus 10% of $16,484.96, the *entire* amount of permanent partial disability compensation.

Iowa Code section 86.13 provides, in relevant part:

> If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the industrial commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

■ In determining the amount of penalty, the Commissioner is to consider

2. Iowa Code section 535.3 provides that interest on money due on judgments pursuant to

section 85.30 shall be calculated at the rate of ten percent per year.

factors such as the length of the delay, the number of delays, the information available to the employer regarding the employee's injury and wages, and the employer's past record of penalties. *See Robbennolt v. Snap–On Tools Corp.*, 555 N.W.2d 229, 238 (Iowa 1996); *see also Murillo v. Blackhawk Foundry*, 571 N.W.2d 16, 19 n. 2 (Iowa 1997) ("Case law does not indicate how the industrial commissioner is to compute penalty benefits. It is unclear whether the commissioner calculates them as a percentage of permanency benefits or whether the calculation is made on some other basis.").

 When permanent partial disability payments are not timely commenced, interest is added to the weekly payments pursuant to Iowa Code sections 85.30 and 535.3. *See also Christensen v. Snap–On Tools Corp.*, 554 N.W.2d 254, 262 (Iowa 1996). Wausau's failure was in delaying the start of the payments after it was notified of Davidson's maximum medical improvement, and again in delaying payment after receiving an impairment rating from Dr. Miller. The penalties assessed for the three month delay between November 11, 1992 (date Davidson reached maximum medical improvement) and February 8, 1993 (date Wausau inquired about an impairment rating), and for the three week delay between February 22, 1993 (date impairment rating was given) and March 18, 1993 (date payment of permanent partial disability commenced) were appropriate. We agree with the district court's interpretation of the Commissioner's award.

 *b. When permanent partial disability payments begin.* Davidson next argues the district court erred in affirming the Commissioner's finding that there was no unexcused delay by Wausau in not paying permanent partial disability benefits between April 10, 1991 (the stipulated commencement date for permanent partial disability benefits) and November 11, 1992 (date which Davidson reached maximum healing).

 Section 86.13 recognizes an affirmative obligation on the part of the employer and insurance carrier to act reasonably in regard to benefit payments in the absence of specific direction by the commissioner. *See Boylan v. American Motorists Ins. Co.*, 489 N.W.2d 742, 743 (Iowa 1992). An employee is entitled to penalty benefits if there has been a delay in payment unless the employer proves a reasonable cause or excuse. *See Christensen*, 554 N.W.2d at 259. A reasonable cause or excuse exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits. *Id.; see also Kiesecker v. Webster City Custom Meats Inc.*, 528 N.W.2d 109, 111 (Iowa 1995); *Covia v. Robinson*, 507 N.W.2d 411, 416 (Iowa 1993). The employer must convey its reason for delay contemporaneously with the beginning of the delay, or a penalty will be imposed. *See Meyers v. Holiday Express Corp.*, 557 N.W.2d 502, 504–05 (Iowa 1996). However, it is an unreasonable application of the penalty provision to assume that any delay after the furnishing of the medical evidence is unreasonable. *See Kiesecker*, 528 N.W.2d at 111.

Davidson contends that because Wausau offered no excuse for its failure to pay permanent partial disability from the date his healing period ended (April 10, 1991), until Davidson reached maximum medical improvement (November 11, 1992), the Commissioner was required to award penalty benefits. In support of his argument, Davidson cites *Christensen v. Snap–On Tools Corp.*, 554 N.W.2d 254 (Iowa 1996). In *Christensen*, the claimant received a permanent impairment rating nearly a year and a half after her injury, sent this information to her employer and requested

permanent partial disability benefits. *Christensen,* 554 N.W.2d at 258. A month after receiving the rating, the employer sought a second opinion, then delayed in commencing benefits and paid the claimant benefits at an incorrect rate. *Id.* The Industrial Commissioner found that there was no medical evidence supporting that the claimant had suffered a permanent injury until the first permanency impairment rating was made, and subsequently awarded penalty benefits for unexcused delays in payment after that event.[3] *Id.* at 259. This finding was affirmed on appeal as substantial evidence supported that there was a legitimate dispute as to the permanency of the claimant's injury prior to the initial permanency rating. *Id.* at 260.

In this case, Davidson returned to work full-time in July of 1991 without restrictions and did not make a claim for permanent partial disability benefits at that time. Despite this, he asserts that Wausau had an affirmative duty to investigate whether he had a permanent impairment. We do not believe that *Christensen* nor any other case law supports the placement of such a burden on the employer under these circumstances. We find that assessment of a penalty is inappropriate until the employer has been informed that an employee has reached maximum medical improvement and then delays in seeking an impairment rating or commencing payment. We find that the Commissioner's award of penalty benefits beginning with the delay after Davidson reached maximum medical improvement was appropriate.

**c. Interest on permanent partial disability payments.** Finally, Davidson contends the district court and the Commissioner erred by failing to address whether Wausau should be penalized for its unexcused delays in not paying permanent partial disability benefits after March 18, 1993. Davidson contends that Wausau should be penalized for not paying the entirety of the $16,466.25 principal which had accrued as of July 19, 1992 on March 18, 1993, and for the further delay caused by underpaying only principal amounts in weekly payment without adding anything for the accrued interest. However, according to the "United States rule," payments must be first applied to accrued interest and the balance, if any, to principal. *See Meyers,* 557 N.W.2d at 507. There was no evidence in the record to indicate that payments did not proceed in this manner, with interest paid first.[4]

Iowa Code section 85.30 adds interest when compensation is untimely paid, to assure the claimant full and complete compensation. Interest due on the permanent partial disability is calculated forward from the healing period benefits date. *See Robbennolt,* 555 N.W.2d at 235; *Teel v. McCord,* 394 N.W.2d 405, 407 (Iowa 1986). In *Teel,* the supreme court reasoned that an employer should pay interest for the period between termination of the healing period and the award because:

> [T]he employer in effect is holding the employee's money, and presumably earning interest on it. By paying this amount back the employer is only returning money it does not rightfully own.

*Teel,* 394 N.W.2d at 407.

Wausau began making payments based on Davidson's permanent par-

---

3. The claimant in *Christensen* was awarded penalty benefits for: 1) the employer's delay between receiving a second opinion on the claimant's impairment and deciding to pay benefits; 2) the employer's delay in mailing a benefits check; and 3) the employer's delay in making payments at the proper rate. No penalty was assessed while the employer was awaiting a second medical opinion as the

court found there was a legitimate dispute as to the permanency during that time period. *See Christensen,* 554 N.W.2d at 258–62.

4. When asked at oral arguments, counsel could not provide us with the total completed payments to show whether all interest and principal had been properly paid.

tial disability as determined from the date the healing period ended, and interest was properly calculated on the total amount of the award. We find no merit in Davidson's assertion that payment of the principal must be made in a lump sum or a penalty is assessed. Permanent partial disability payments are paid in weekly installments and not in a lump sum, unless the parties so agree in a settlement. *See* Iowa Code §§ 85.34, 85.35. So long as interest is being calculated from the proper commencement date for permanent partial disability payments, the claimant will be fully compensated for the delay in payment. Furthermore, penalties under section 86.13 are assessed for delay in the *commencement* of benefits; it does not support that there should be a penalty imposed for delayed interest payments. *See also Weishaar v. Snap–On Tools Corp.,* 506 N.W.2d 786, 791 (Iowa App. 1993).

Having considered all issues properly before us on appeal, we hereby affirm the ruling of the district court on judicial review.

**AFFIRMED.**