**James McKIM, Plaintiff,**

v.

**MERITOR AUTOMOTIVE INC., Defendant.**

No. 4:00–CV–90385.

United States District Court, S.D. Iowa, Central Division.

Aug. 7, 2001.

Christopher D. Spaulding, Donald G. Beattie, Des Moines, IA, for plaintiff.

Randall .H. Stefani, Steven M. Nadel, Des Moines, IA, for defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

PRATT, District Judge.

On July 25, 2000, Plaintiff James McKim ("Plaintiff") filed a Complaint before this Court alleging that Defendant Meritor Automotive Inc. ("Meritor"), in bad faith, denied or otherwise failed to pay workers' compensation benefits that were due him. Specifically, McKim alleges that Meritor, in bad faith: (1) wrongfully denied permanent partial disability benefits payable to the Plaintiff; (2) failed to pay the Plaintiff permanent partial disability benefits without a valid basis for denial; (3) attempted to obtain medical opinions supporting their denial after their authorized treating phy-

sician had already given his opinion on permanency; the entire time failing to pay the weekly permanent partial disability benefits as they accrued in violation of Iowa law; and (4) failed to pay interest on accrued benefits in violation of Iowa law. *See* Compl. at 2.

On March 23, 2001, Defendant Meritor filed a motion for Summary Judgment as to all four counts of bad faith in the Complaint. Plaintiff McKim moved for partial summary judgment on the issue of failure to pay interest on June 4, 2001. Briefs and resistances were duly filed and a hearing was held on the matter on July 25, 2001. At the hearing, Plaintiff withdrew his motion for partial summary judgment. The Court will, therefore, only consider Defendant's motion for summary judgment. The matter is fully submitted.

### I. FACTS

This present action is founded on diversity of citizenship, 28 U.S.C. § 1332. Plaintiff McKim is a citizen of the State of Iowa. Defendant Meritor is a corporation incorporated under the laws of the State of Nevada and has its principal place of business in the State of Michigan. Meritor is self-insured for purposes of workers' compensation claims. There is no dispute between the parties that Iowa law is controlling in this matter.

On January 27, 1999, Plaintiff McKim suffered a crush injury and laceration to his hand when a piece of metal fell on it during the course of his employment with Meritor. *See* Compl. at 2; Def.'s Br. in Supp. of Summ. J. at 1; Pl.'s App., Tab 1 at 1. Plaintiff was taken to the Fairfield, Iowa clinic where his hand was x-rayed and the laceration was sutured. *See* Pl.'s App., Tab 1 at 1. On February 2, 1999, Plaintiff received follow-up care for swelling and impaired movement of his hand and finger from Thomas Wallace, M.D., a

physician approved by Meritor. *See* Pl.'s Statement of Undisputed Material Facts at 1; Pl.'s App., Tab 1 at 1. In March of 1999, Dr. Wallace issued a letter to Defendant Meritor in which Dr. Wallace stated the following:

Dr. Brian Adams [a hand surgery specialist who consulted on the case] feels that Mr. McKim should have near complete recovery, with perhaps a minimal limitation such as a[sic] extensor lag in his finger. This is all secondary to his crush injury with a laceration involving his left hand at work.... In discussing with Dr. Adams, we feel that he should have complete recovery within 4 to 6 months of the time of surgery, and should have [sic] should be back to his normal position in a much shorter time than that, perhaps within another 3 to 5 weeks. This, however, is dependent upon Mr. McKim carrying through his rehabilitation and ongoing occupational therapy.

App. to Def.'s Mot. for Summ. J.

The letter from Dr. Wallace was received on March 30, 1999 by Kenneth Kinsey, Meritor's in-state designated representative in Iowa. Mr. Kinsey admitted in his deposition that, based on Dr. Wallace's letter, he knew Plaintiff "was going to sustain a permanent injury in some amount or some percent that was going to be compensable in some percent." Pl.'s App., Tab 9 at 31–32. It appears from the record that Plaintiff saw Dr. Wallace throughout February and March, 1999, and saw Dr. Adams on March 10 and April 21, 1999. *See id.*, Tab 1 at 3.

On June 17, 1999, Plaintiff was seen by Patrick Hartley, M.D., another physician in Dr. Wallace's office. In his notes, Dr. Hartley expressed concern about Plaintiff's compliance with his rehabilitation program, stating, "I think he is likely to continue to have significant functional limitation which at least in part is due to his suboptimal compliance with his recommended hand therapy program." Pl.'s App., Tab 2 at 2. Dr. Hartley recommended a follow-up visit in one month and indicated that if no change was apparent at that time, he would consider an impairment rating. On July 15, 1999, Plaintiff again saw Dr. Hartley who opined in his notes that Plaintiff had reached maximal medical improvement. *Id.*, Tab 2 at 4. On July 29, 1999, Dr. Hartley made a functional impairment rating of Plaintiff's hand, finding a nineteen percent permanent impairment. *Id.* at 5. Dr. Hartley's impairment rating did not, however, indicate whether, or to what extent, Plaintiff's noncompliance with therapy contributed to the impairment rating of 19%. The July 15 progress notes were received by Meritor on August 11, 1999 and the July 29 impairment rating was received by Meritor on August 16, 1999. It is undisputed that Meritor did not make any additional inquiries about Plaintiff's condition between the March, 1999 letter from Dr. Wallace and its receipt of the July 29, 1999 impairment rating by Dr. Hartley. *See* Def.'s Resp. to Pl.'s Statement of Undisputed Material Fact at 2.

Upon receiving Dr. Hartley's nineteen percent impairment rating on August 16, Meritor sought legal counsel and began an investigation of the issue of permanent impairment. *See* Def.'s App. at 30–31. On September 15, 1999, Steven M. Nadel, counsel for Meritor, spoke with Dr. Wallace who opined that Plaintiff would have had a 2–5% impairment rating if he had been compliant with therapy recommendations. *See* Def.'s App. at 16. Based on Dr. Wallace's opinion, Mr. Nadel informed Plaintiff that Meritor would issue a check for permanency benefits in the amount of three and one half percent. *Id.* Dr. Wallace formally expressed his opinion regarding an impairment rating in a letter to Mr. Nadel dated February 22, 2000, though the

range given in the letter was 3–5% impairment rather than 2–5% impairment. *See* Def.'s App. at 18. On September 17, 1999, Meritor issued a check to Plaintiff in the amount of $2648.97 "for the payment of the percentage of permanent partial disability for Mr. McKim. Mr. McKim was paid three and one half percent of 190 weeks, based on the loss of use for the hand, at the rate of $398.34 per week, starting on July 15, 1999, the date Dr. Hartley stated he had reached maximum medical improvement." Def.'s App. at 20. On February 22, 2000, Meritor told Plaintiff that an additional one-half percent permanent partial disability benefits would be paid, though Meritor "inadvertently did not make the payment" until September 22, 2000. Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts at 6. No portion of the original three and one-half percent payment or of the one-half percent additional payment was designated as interest. *Id.* at 6–7.

There is no dispute in the record that Meritor claims its payment of three and one-half percent permanent partial disability to the hand is based on noncompliance with therapy. *See* Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts at 3. There is also no dispute that Denise Gallagher, Plaintiff's treating occupation therapist, and Dr. Adams, the consulting surgeon, both rated Plaintiff's compliance with therapy to be "reasonable." Pl.'s App., Tab 3 at 28, Tab 4 at 29–30.[1] Denise Gallagher also opined that Plaintiff's limitations were due to the original injury and not to any lack of compliance. *Id.*, Tab 4 at 29. Additionally, Plaintiff alleges that Dr. Hartley stated on January 20, 2000 that, based on a reasonable degree of medical certainty, he could not say whether Mr. McKim's functional impairment would have been different if he had been fully

compliant. *See* Pl.'s App., Tab 2 at 18. Dr. Hartley reiterated this position in a letter to Mr. Nadel on February 17, 2000. *Id.* at 20. Finally, there is no dispute that Dr. Wallace did not personally examine or evaluate Plaintiff to measure his functional impairment. *See* Pl.'s App., Tab 1 at 11–12.

Plaintiff claims that Meritor owed permanent partial disability benefits to McKim in March, 1999, when Kenneth Kinsey was admittedly aware that some permanent partial disability benefits would be owed. Thus, Plaintiff charges that Defendant was unreasonable and acted in bad faith by failing to investigate the issue until after it received Dr. Hartley's nineteen percent impairment rating on July 29, 1999. Plaintiff additionally contends that Meritor was unreasonable in allowing a seven month delay in paying the additional one-half percent permanent partial disability benefits it promised and in allowing one full year to elapse between the time Kenneth Kinsey first knew benefits would be payable to the time Meritor received a written report on impairment from Dr. Wallace. Finally, Plaintiff claims that Meritor's failure to pay interest from the date of injury on January 27, 1999 constitutes bad faith and a "willful and wanton disregard" for Plaintiff's rights.

In its Brief in Support of Summary Judgment, Meritor counters that Plaintiff's claims must be dismissed as a matter of law because Meritor had a reasonable basis to investigate the extent, if any, of compensable permanent impairment. Meritor further claims that it had a reasonable basis for paying the permanent partial disability benefits that it did and to deny any further benefit payments, thus entitling Meritor to judgment as a matter of law.

---

1. Ms. Gallagher's statement was made on March 29, 2000. Dr. Adams' statement was based on the report from Ms. Gallagher and was dated December 20, 2000.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment has a special place in civil litigation. The device "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). In operation, the role of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required. *See id.; see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990).

"[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda General Hospital*, 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of the rule is not "to cut litigants off from their right of trial by jury if they really have issues to try," *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried," *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir. 1976) (citing *Lyons v. Board of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed.

R.Civ.P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis added). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. ANALYSIS

While Plaintiff states four distinct allegations of wrongful conduct, each claim is premised upon the bad faith of Meritor. The Court will address the first three allegations of wrongful conduct together and will address the issue of bad faith failure to pay interest on accrued benefits separately.

### A. *Plaintiff's First Three Allegations of Bad Faith*

In his first three claims of bad faith, Plaintiff alleges that Meritor, in bad faith: (1) wrongfully denied permanent partial disability benefits; (2) failed to pay Plaintiff permanent partial disability benefits without a valid basis for denial; and (3) attempted to obtain medical opinions supporting their denial after their authorized treating physician gave his opinion on permanency, the entire time failing to pay weekly permanent partial disability benefits as they accrued.

 The Iowa Supreme Court has recognized a cause of action against workers' compensation insurers for the failure to pay benefits in good faith. *See Boylan v. American Motorists Ins. Co.*, 489 N.W.2d 742 (Iowa 1992). The *Boylan*

court found that the same principles and standard of liability it found applicable in *Dolan v. Aid Ins. Co.*, a first-party insurance bad faith case, were applicable in the context of workers' compensation. *See Boylan*, 489 N.W.2d at 743–44; *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988). In a claim for first-party bad faith in a workers' compensation claim, the burden is upon the Plaintiff to prove two propositions: (1) the absence of a reasonable basis for denying benefits; and (2) knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *See Dolan*, 431 N.W.2d at 794. The burden is on the defendant employer/insurer, however, to prove that it had a reasonable cause or excuse in denying benefits once the plaintiff employee is entitled to such benefits. *See Christensen*, 554 N.W.2d at 260. Whether sufficient evidence exists to generate a jury issue on a claim of bad faith is a legal issue for the Court to decide. *See Thompson v. U.S. Fidelity & Guaranty Co.*, 559 N.W.2d 288, 291 (Iowa 1997).

### 1. *Determination of dates when benefits were first owed.*

 *Boylan* established that a workers' compensation employer has an affirmative obligation to act reasonably in regard to benefit payments absent a specific directive by the Industrial Commissioner. *Boylan*, 489 N.W.2d at 743. Thus, from the time that permanent partial disability benefits became due in this matter, Meritor had an affirmative duty to make sure that such benefits were paid in good faith. Absent a reasonable basis for refusing to pay the benefits as of the date they became due, Meritor could be held liable in tort for bad faith. Thus, to make the determination of the reasonableness of Meritor's actions, the Court must first determine at what point in time permanent

partial disability benefits were actually owed in this matter.

It appears from the record that the parties are in disagreement over when permanent partial disability benefits became due. Plaintiff relies heavily on the fact that Kenneth Kinsey, Meritor's designated in-state representative and one of the individuals responsible for making a decision regarding Plaintiff's workers' compensation claim, testified in deposition that he was aware that Plaintiff would be entitled to some permanent partial disability benefits in some amount on March 30, 1999. Plaintiff seems to contend that some affirmative duty was owed Plaintiff at that point merely because Meritor became aware, through its agent, that some amount of benefits would need to be paid.

The Court does not find this fact determinative. While it is true that Meritor had knowledge that it would be required to pay partial disability benefits in some amount to Mr. McKim, this fact does not alter the statutory time frame which determines when benefits are actually due. In many workers' compensation cases, the principal may know very early on that it will be required to pay permanent partial disability benefits at some point in time, based solely on the nature of the injury. Mere knowledge that some undefined amount of benefits will need to be paid at some undetermined point in the future does not, however, impose a duty upon a workers compensation insurer, absent some statutory directive or other legal holding.

The Court is unclear as to precisely what duty Plaintiff believes was owed him at the point when Meritor, on March 30, 1999, became aware that permanent partial disability benefits would need to be paid in the future. Plaintiff states, "Defendant at no time explored any compliance issues with the Claimant, the treating physician or any other physician until *after*

the functional impairment rating was received ... Defendant's failure to in any way investigate the issue of compliance and its effect, if any, on the functional impairment rating does not meet their affirmative duty under Iowa Code Section 86.13 and Iowa Case law cited...." Pl.'s Br. in Support of His Resistance to Summ. J. at 6.

Meritor counters that despite knowledge that Plaintiff may have sustained a permanent injury that would be compensable in some amount, it had no way of making a determination of compensation owed Plaintiff until it received an impairment rating from Plaintiff's physician. Meritor contends that were it to call upon Plaintiff's physician before treatment is completed and ask for impairment ratings and the impact of patient compliance with therapy regiments on that impairment rating, it could be liable for interference with Plaintiff's right of care and treatment. Further, Meritor argues, to make investigation into such matters before the physician offers an impairment rating could be perceived as some sort of attempt to coerce or otherwise influence the physician's independent medical judgment.

The Court can find no case law indicating that Meritor had an obligation to investigate the extent of Plaintiff's disability until it received information from his treating physician that maximum medical improvement had been achieved and an impairment rating was issued. Prior to receiving Dr. Hartley's impairment rating, Meritor had very little to investigate. There was no dispute that Plaintiff's injury was sustained at work or that it would be compensable under workers' compensation. Meritor received progress reports and monitored the information given it by Plaintiff's physicians. It is clear that all of Plaintiff's treating physicians repeatedly advised him of the importance of exercis-

ing and caring for his injury. Meritor could have done nothing to encourage Plaintiff's compliance with his therapy regiment. That was a matter to be handled between the Plaintiff and his care providers. Indeed, the Court agrees with the argument that Meritor's counsel made at hearing: Had Meritor tried to investigate prior to the point of maximum medical improvement and receipt of Dr. Hartley's impairment rating, it could have been held liable for interfering with Plaintiff's medical treatment.

■ While the employer has the right to select the appropriate treating sources, the employer has no business directing the specific care that is to be given. *See* Iowa Code § 85.27 ("the employer is obliged to furnish reasonable services ... to treat an injured employee, and has the right to choose the care"); *see also Kloster v. Hormel Foods Corp.*, 612 N.W.2d 772, 775 (Iowa 2000) (noting that "[a] patient has a right to expect health care professionals will make decisions based on sound, qualified medical judgment" where employee alleged employer was exercising improper influence over employee's treating physician). It is unlikely that workers injured on the job would welcome their employers active participation in the inherently private realm of medical treatment. Rather, the Court suspects, most injured workers would prefer to have their employer await the treating physicians conclusions and subsequently allow some investigative time. To expect a workers' compensation insurer to subject itself to the risk of added liability for interfering with an injured worker's care is simply unreasonable.

■ The Court believes that Defendant came under an affirmative duty to either make payment, or for reasonable cause, investigate the amount owed, on the date that Dr. Hartley determined that Plaintiff had reached maximum medical improvement. Iowa Code § 85.34(2) provides,

"Compensation for permanent partial disability shall begin at the *termination* of the healing period provided in subsection 1." Iowa Code § 85.34(2) (emphasis added). Iowa Code § 85.34(1) provides that the healing period shall be the period of time from injury to return to work or until "it is medically indicated that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of the injury, whichever occurs first."

The parties informed the Court at the hearing that Plaintiff did not miss even one full day of work due to his injury. Thus, in determining when permanent partial disability benefits became payable, the proper time frame in this case is the date of maximum medical improvement. The reasoning in *Ellingson v. Fleetguard, Inc.*, 599 N.W.2d 440 (Iowa 1999), supports this conclusion. In *Ellingson*, the Iowa Supreme Court affirmed the Commissioner's finding that healing-period benefits were only payable for full days of work missed. *Ellingson*, 599 N.W.2d at 446. Relying on its finding in *Pitzer v. Rowley Interstate*, 507 N.W.2d 389, 391 n. 1 (Iowa 1993), that temporary total disability compensation and healing-period compensation refer to the same condition, the Court concluded that "payment of healing period compensation is subject to the same restrictions that apply to temporary total disability payments.... The commissioner was correct in limiting payment of healing-period benefits to full days lost."

Since Plaintiff in this matter did not miss a full day of work, he is not eligible for healing-period benefits and thus, permanent partial disability benefits must be based on the alternate language in § 85.34 indicating that benefits are payable when maximum medical improvement is

achieved. Plaintiff's date of maximum medical improvement, as documented by Dr. Hartley, was July 15, 1999. Thus, permanent partial disability benefits were owed to the Plaintiff as of that date.

*2. Evaluation of the time period between July 15, 1999 and August 16, 1999.*

█ The next critical question for the Court to evaluate is whether Meritor had a reasonable basis for denying benefits on July 15, 1999. The Court believes it did. First, while Dr. Hartley noted that maximum medical improvement had been achieved on July 15, 1999, Meritor was not aware of this finding until it received Dr. Hartley's progress notes on August 11, 1999, nearly a month later. The Iowa Supreme Court has taken judicial notice of the "continuing breakdown in United States mail deliveries [assuming] proportions of national disaster." *Smith v. Iowa Employment Security Commission,* 212 N.W.2d 471, 473 (Iowa 1973) (citing *Eves v. Iowa Employment Security Commission,* 211 N.W.2d 324 (1973)). While no explanation has been provided for the delay in Meritor's receipt of Dr. Hartley's determination that Plaintiff had achieved maximum medical improvement, neither party denies that there was a significant delay between the date of the doctor's conclusion and the date that Meritor became aware of that conclusion. It is not unreasonable to think that Dr. Hartley dictated his conclusions, they were transcribed a few days later, signed by Dr. Hartley a few days after that, and mailed still a few days after that. Whatever the reason for the delay, the Court does not believe that Meritor could have acted unreasonably or in bad faith in regards to an issue of which it concededly had no knowledge.

█ This same reasoning applies to Meritor's receipt of Dr. Hartley's impairment rating. While Dr. Hartley made the impairment rating on July 29, 1999, Meri-

tor admittedly did not receive it until August 16, 1999. The Iowa Court of Appeals has found that imposition of a penalty pursuant to Iowa Code section 86.13 is inappropriate absent some evidence that the employer delayed seeking an impairment rating or in making payment after it receives information that an injured employee has reached maximum medical improvement. *See Davidson v. Bruce,* 594 N.W.2d 833, 839 (Iowa Ct.App.1999).

█ The *Davidson* court affirmed a finding by the industrial commissioner that penalties were appropriate when the employer delayed inquiring about an impairment rating for nearly three months after it received notice that the employee had received maximum medical improvement. *Id.* at 838–39. However, in *Christensen,* the Iowa Supreme Court refused to assess penalties in a situation where, one month after receiving the employee's impairment rating, the employer sought out a second opinion on the extent of impairment. *Christensen,* 554 N.W.2d at 258. The *Christensen* court found that the delay while the employer awaited a second opinion was reasonable because, during that time period, there was a legitimate dispute about the permanency of the injury. *Id.* at 258–262. As in *Christensen,* the Court here believes that a one month delay in obtaining a second impairment rating is not unreasonable because there was a legitimate dispute about the extent of Plaintiff's injury attributable to his noncompliance with therapy.

From the record before it, the Court cannot find any evidence that Meritor was unreasonable or acted in bad faith between August 11, 1999 (the time it received notice that Plaintiff had achieved maximum medical improvement) and August 16, 1999 (the time it received Dr. Hartley's impairment rating). No evidence has been presented that Meritor deliberately delayed request-

ing an impairment rating from Dr. Hartley once it realized that maximum medical improvement had been achieved. Indeed, Meritor had every reason to believe that it would promptly receive an impairment rating from Dr. Hartley without requesting it based on Dr. Hartley's notation in his July 15, 1999 progress report that "[a]n impairment rating will be calculated based on results of his examination and range of motion demonstrated today." Pl.'s App., Tab 2 at 16. On these facts, Meritor's failure to seek out an impairment rating for five days, particularly when it knew that Dr. Hartley was in the process of calculating the rating, does not appear to be an unreasonable delay sufficient to maintain Plaintiff's claim for bad faith.

*3. Meritor's delay in making payments after receipt of Dr. Hartley's impairment rating.*

 The penalty provision of Iowa Code § 86.13 provides, "If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the industrial commissioner shall award benefits in addition to those benefits payable under this chapter...." The Iowa Supreme Court has interpreted § 86.13 and found that a "reasonable basis" or "reasonable cause" to deny a claim exists when a claim is "fairly debatable." *See Covia v. Robinson,* 507 N.W.2d 411, 416 (Iowa 1993). An employer's bare assertion that a workers' compensation claim is "fairly debatable" does not make it so. *See Meyers v. Holiday Express,* 557 N.W.2d 502, 505 (Iowa 1996). Rather, the employer must come forth with facts upon which the Court can find that the claim is "fairly debatable." *Id.* (citing *Christensen,* 554 N.W.2d at 260).

The Iowa Supreme Court, in *Kiesecker v. Webster City Custom Meats, Inc.,* held that a delay in making workers' compensation payments while the insurer investigated the claim was reasonable. *Kiesecker,*

528 N.W.2d at 111. In *Christensen v. Snap–On Tools,* the Iowa Supreme Court found, "A reasonable cause or excuse exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits.... The focus is on whether timely payment of the benefits due was made and if not, whether there was a reasonable excuse for the failure to make timely payment of the amount owed." *Christensen v. Snap On Tools Corp.,* 554 N.W.2d 254, 260 (Iowa 1996).

As the Court discussed above, the delay between the date of maximum medical improvement, July 15, 1999, and the date that Meritor received Dr. Hartley's impairment rating, August 16, 1999, is not sufficiently unreasonable to support Plaintiff's claim for bad faith. The Court now will consider whether Meritor had a reasonable basis to withhold permanent partial disability benefits between August 16, 1999 and September 17, 1999, the date that Meritor made payment for a three and one-half percent impairment rating.

 The Court believes that Meritor had "a reasonable cause or excuse" for its failure to pay benefits when they were due because "the delay was necessary for the insurer to investigate the claim," *see Christensen,* 554 N.W.2d 254, and because the claim became "fairly debatable" once Meritor received the nineteen percent impairment rating. *See Covia v. Robinson,* 507 N.W.2d at 416. In *Stufflebean v. City of Fort Dodge,* an employee who suffered a hernia while on the job refused to undergo an operation believed to be reasonably necessary for treatment of the hernia. *Stufflebean v. City of Fort Dodge,* 233 Iowa 438, 9 N.W.2d 281, 282 (Iowa 1943). The Court noted the generally recognized rule that "an arbitrary or unreasonable refusal to submit to offered medical or

surgical treatment, which does not seriously endanger claimant's life or health and which is shown to be reasonably certain to minimize or cure the disability for which compensation is sought, will warrant reduction, suspension or forfeiture of such compensation." *Id.* at 283.

Armed with knowledge that full permanent partial disability benefits may not be owed if there is a failure to comply with treatment, Meritor had adequate evidence before it to believe that Plaintiff's "suboptimal compliance" with his recommended therapy program may have contributed to a greater impairment rating than would have existed had he been optimally compliant with the therapy program.

Dr. Wallace noted in his March 4, 1999 notes that "Mr. McKim today states that he expects an impairment rating at the end of this treatment, which concerns me as to whether or not he will fully participate in the program to get full functional recovery, which is clearly the goal." Pl.'s App, Tab 1 at 6. In his undated letter to Kenneth Kinsey, Dr. Wallace stated that Plaintiff should have a full recovery in four to six months, though the time and extent of his recovery "is dependent upon Mr. McKim carrying through his rehabilitation and ongoing occupational therapy." *Id.* at 8. Finally, in a letter dated February 22, 2000, Dr. Wallace stated,

> I knew it was going to be critical that he rapidly and aggressively rehab his hand early or he would end up with a permanent impairment. This was expressed to him not only at the first visit at which I saw him, but at each visit in the four to five months that I saw him after his injury ... During the time I was seeing Mr. McKim, I expressed to him that his maximal functional impairment should only be three to five percent (3–5%), if he continued to work very hard at getting full recovery. I stressed the importance of this for functional recovery, for

his own personal benefit ... Despite this, he continued to not push on his recovery as he should have.

*Id.* at 11.

In notes dated June 17, 1999, Dr. Hartley also expressed concern over Plaintiff's compliance with his rehabilitation program, stating,

> [He] clearly is not optimally compliant with his recommended exercise program ... I reemphasized to Mr. McKim, as has Dr.'s Adams and Wallace in the past, the importance of his exercise program and the use of splinting for joint contracture. Unfortunately, I think he is likely to continue to have significant functional limitation which at least in part is due to his suboptimal compliance with his recommended hand therapy program. Dr. Adams in the past has expressed an opinion that with appropriate therapy that he should have almost 100% recovery function of his hand with perhaps some extensor lag at end range.

*Id.,* Tab 2 at 13–14.

Plaintiff argues that Meritor fails to refer to Dr. Hartley's January 20, 2000 report wherein he states, "based upon a reasonable degree of medical certainty [, ] Mr. McKim's functional impairment would not have been anything different even if he had been fully compliant." Pl.'s Br. In Support of His Resistance to Def.'s Motion for Summ. J. at 9. The Court assumes that Plaintiff is referring to the February 17, 2000 letter from Dr. Hartley to Steven Nadel in which Dr. Hartley states,

> In response to question one, it is my opinion that Mr. McKim was not compliant with his treatment recommendations, which included some stretching exercises and the use of a splint ... it is true that I became Mr. McKim's treating physician late in the course of his recovery period. At the time that I became involved in his care he already

had evidence of impairment which did not substantially change over the course of subsequent visits and was ultimately determined to be a permanent partial impairment. *I cannot state, to any reasonable degree of medical certainty, that had Mr. McKim been more compliant with his therapy this would have resulted in a decrease in his final permanent partial impairment.* However, review of his clinic notes, in particular the opinion of Dr. Brian Adams, an experienced hand surgeon, would suggest that he anticipated a better outcome. As I was not involved in the care of Mr. McKim early in the course of his injury and recovery, I would defer to the opinion of an expert in this field such as Dr. Adams.

*Id.* at 20 (emphasis added). The Court believes that Plaintiff's characterization of Dr. Hartley's position is vastly skewed. The Plaintiff implies that Dr. Hartley said that compliance with treatment regiments would have made no difference in Plaintiff's impairment rating. The Court believes Dr. Hartley, in his February 17 letter, merely stated that he does not know if full compliance would have resulted in a better outcome. The inference drawn by the Plaintiff is unreasonable and ordinarily is not the type of evidence that generates fact questions.

There is additional evidence in the record that Plaintiff's outcome may have been different had he followed his prescribed treatment regiments. On March 10, 1999, Dr. Adams notes: "I reinforced to him [McKim] that his long term outcome should be good with recovery of near full motion if he participates well in the exercise program and other rehabilitation efforts." *Id.,* Tab 3 at 23. In the same report and in another dated April 21, 1999, Dr. Adams indicates that Plaintiff was resistant to the doctor's efforts to determine his range of motion, specifically, "[o]n examination I once again found it difficult to

have him fully comply with my requests to full extend and full flex the fingers. He either co-contracts or he opposes the manipulation. . . ." *Id.* at 23–24.

The Court realizes that there is no dispute that Denise Gallagher and Dr. Adams rated Plaintiff's compliance with therapy as reasonable. However, despite those opinions, Meritor had received progress notes for several months during Plaintiff's recovery indicating that he was not complying with his therapy and that this could hinder his recovery. The Court believes that, based on the evidence, specifically the observations of Drs. Adams, Wallace, and Hartley, the impairment rating of nineteen percent was fairly debatable and gave Meritor a legitimate and reasonable basis for investigating whether the impairment rating would have been different if Plaintiff had been more cooperative and compliant in his therapy.

 Having found that Meritor had a legitimate and reasonable basis to delay payment while an investigation was conducted, the Court now turns to the issue of whether its investigation was reasonable under the circumstances. Less than a month after commencing its investigation, Meritor spoke with Dr. Wallace and was told that Plaintiff should have had a 2–5% impairment rating had he been optimally compliant. Within two days of this telephone conversation, Meritor made payment to Plaintiff in accordance with Dr. Wallace's statement.

Plaintiff argues that because Kenneth Kinsey knew that some permanent partial disability benefits would be payable in March 1999 and the report by Dr. Wallace was not prepared until February 22, 2000, Meritor had a full year to make a "reasonable investigation." This argument is without merit. The Court can find no authority requiring that a medical doctor's impairment rating must be presented in

writing to be valid. Meritor commenced its investigation on August 16, 1999 and apparently believed the investigation was concluded when it issued payment on September 17, 1999. When it received written confirmation from Dr. Wallace in February 2000, Meritor offered to pay an additional one-half percent impairment payment to keep its payment in the mid-range of Dr. Wallace's range of impairment.

It appears to the Court that Defendant began and ended its investigation of the matter in a time period of one month and one day. In *Christensen*, the Iowa Supreme Court found that a two-month delay between the date a workers' compensation insurer received an impairment rating and the date it received its own report from an independent medical expert was a reasonable delay. *Christensen*, 554 N.W.2d at 261. The Supreme Court noted that the period for investigation was particularly reasonable "in light of prior medical records indicating she [the injured employee] would recover from her injury." *Id.* The Court believes the situation at bar is quite similar. Meritor received information early on in Plaintiff's treatment indicating that he would have a full or nearly full recovery with minimal permanent impairment. When it received a permanent impairment rating of nineteen percent, it justifiably commenced an investigation to determine whether Plaintiff's noncompliance with therapy contributed to an increased impairment rating. One month and one day was not an unreasonable amount of time for Meritor's investigation to proceed. After receiving Dr. Wallace's report, Meritor promptly paid benefits in accordance with the amount it believed was indicated by the investigation.

 Meritor has presented adequate evidence to convince the Court that it had a reasonable and justifiable basis to delay Plaintiff's permanent partial disability benefits. Having done so, Plaintiff's

claim fails as a matter of law because it fails to meet the first prong of the *Boylan* test, i.e., "the absence of a reasonable basis for denying benefits." *Dolan*, 431 N.W.2d at 794. However, even if the Court were unable to find a reasonable basis for Meritor's delay in paying benefits, Plaintiff's claim would still fail under the second prong of the *Boylan* test. While a claim for statutory penalty benefits under section 86.13 does not require proof of the employer/insurer's "knowledge or reckless disregard of the lack of a reasonable basis for denying the claim," a claim for bad faith does. *Id.*; *Gilbert v. Constitution State Service, Co.*, 101 F.Supp.2d 782, 786 (S.D.Iowa 2000) (quoting *Dolan*, 431 N.W.2d at 794). The record here is simply devoid of any evidence indicating that Meritor recklessly or willfully disregarded its obligation to pay workers' compensation benefits when due. *See Gilbert*, 101 F.Supp.2d at 782; *Dolan*, 431 N.W.2d at 794. Rather, it appears that Meritor reasonably believed that it was justified in delaying benefits until it was certain of the impact Plaintiff's noncompliance with therapy had on his impairment rating. Once Meritor was reasonably certain of the impact, it promptly made payment in accordance with what it believed would have been Plaintiff's impairment rating had he complied with treatment.

*4. The delay in payment of an additional one-half percent impairment benefits.*

 Plaintiff also contends that Meritor acted unreasonably when it promised to pay an additional one-half percent permanent partial disability benefit, and then failed to do so until approximately seven months later. On February 23, 2000, one day after receiving the formal letter from Dr. Wallace, Meritor sent a letter to Plaintiff's counsel wherein Meritor stated,

You will see Dr. Wallace opines impairment would have been 3%–5% of the

hand. He previously indicated 2%–5%. This may only be a typographical error on his part, but to avoid any unnecessary controversy on this point Meritor will issue a check for ½% of the hand. This will bring total PPD paid to 4%, the mid-point of the range from Dr. Wallace in his letter.

Pl.'s App., Tab 5 at 42. Meritor claims that it inadvertently did not send out the additional payment until September 22, 2000. Plaintiff cites *Christensen* in support of its claim for bad faith on this aspect of the record. In *Christensen,* the Iowa Supreme Court found no unreasonable delay in a two month investigation. *Christensen,* 554 N.W.2d at 261. The *Christensen* Court did, however, find that a delay in payment of an additional thirteen days after the two month investigation ended was unreasonable. *Id.* Thus, Plaintiff argues that because the Iowa court held a thirteen delay unreasonable, this Court should hold a seven-month delay to be unreasonable. The Court, however, believes that the case now before it is factually distinguishable from *Christensen* on this point.

When Meritor agreed to pay the additional one-half percent, it was under no legal obligation to do so. A claim for bad faith requires the absence of a reasonable basis for denying benefits and knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *See Dolan,* 431 N.W.2d at 794. At the core of a bad faith claim is the necessity that benefits are actually due and owing. It defies logic to think that an employer/insurer can be held liable for bad faith failure to pay a claim or benefits that it was under no obligation to pay. It appears that by agreeing to pay an additional one-half percent impairment, Meritor was simply trying to prevent further complication of the issue by paying additional compensation. If Meritor had refused to pay any additional permanent partial disability

benefits, even despite the discrepancy in Dr. Wallace's verbal and written communications, it would have still been within the range of impairment defined by Dr. Wallace. Meritor would still have had a justifiable basis for paying the compensation it did. The fact that Meritor paid this additional amount only bolsters its claim that it has acted in good faith in regards to Plaintiff's claim.

▮ The second and third elements of the Iowa Civil Jury Instruction on first-party bad faith, in part, mirrors the two-prong test for bad faith laid out in *Boylan.* To maintain a claim for first-party bad faith in this matter, the Plaintiff must prove five propositions: (1) That the Defendant failed to pay permanent partial disability benefits; (2) There was no reasonable basis for Defendant's failure to pay permanent partial disability benefits; (3) The defendant knew or had reason to know that there was no reasonable basis for refusing to pay permanent partial disability benefits; (4) The refusal to pay permanent partial disability benefits was a proximate cause of damage to the plaintiff; and (5) The nature and extent of damage. Iowa Civ. Jury Inst. 1410.1. Based on the Court's discussion above, the Court believes that Plaintiff has failed to present evidence which, in the light most favorable to him, could allow him to prevail on the first prong of the *Boylan* test and the second element of Iowa Civil Jury Instruction 1410.1. The Court believes that no reasonable jury could find that Defendant delayed payment of permanent partial disability benefits in this matter without a reasonable basis. Viewing the record in the light most favorable to the Plaintiff in this matter, as the Court must, Plaintiff has failed to carry its burden on the issue of bad faith as to the first three allegations in the Complaint. Defendant, therefore, is entitled to judgment as a matter of law on

Plaintiff's first three bad faith claims. There is simply insufficient evidence of bad faith administration of this workers' compensation claim by the employer/insurer.

### B. Plaintiff's Bad Faith Failure to Pay Interest Claim

■ The Court now turns to Plaintiff's claim that Defendant, in bad faith, failed to pay interest on accrued benefits. Iowa Code Section 85.30 provides that if compensation is not paid when due, "there shall be added to the weekly compensation payments, interest at the rate provided in section 535.3 for court judgments and decrees." Iowa Code § 85.30. There is no dispute that no portion of the payment made to Plaintiff in this matter was designated as interest.

When the Iowa Supreme Court extended tort liability for first-party bad faith to workers' compensation claims, it stated:

> We conclude that it is unlikely that the legislature intended the penalty provision in section 86.13 to be the sole reme- dy for all types of wrongful conduct by carriers with respect to administration of workers' compensation *benefits*. By its terms, it applies only to delay in commencement or termination of benefits. It contemplates negligent conduct rather than the willful or reckless acts that are required to establish a cause of action under Dolan. In addition, no remedy is provided under section 86.13 for delay or failure to pay medical *benefits*.

*Boylan*, 489 N.W.2d at 744 (citations omitted) (emphasis added).

The Iowa Court of Appeals has found that failure to pay interest on weekly compensation payments due does not give rise to penalty benefits under Iowa Code Section 86.13 because the word "benefits" in that section did not include interest. *We-*

*ishaar v. Snap–On Tools Corp.*, 506 N.W.2d 786 (Iowa App.1993).

Because the first element for a bad faith claim, the absence of a reasonable basis for denying benefits, is the same as the standard for Section 86.13 benefits, the Court believes that there is a legitimate question as to whether the Iowa Supreme Court intended tort claims for bad faith payment of workers' compensation benefits to encompass bad faith nonpayment of interest. Bad faith claims in this matter are premised on the failure to pay *benefits* due under workers' compensation without a reasonable basis. *See Reedy v. White Consolidated Ind., Inc.*, 503 N.W.2d 601, 602 (Iowa 1993) (indicating that *Boylan* dealt with failure to pay benefits).

■ "When permanent partial disability payments are not timely commenced, interest is added to the weekly payments pursuant to Iowa Code sections 85.30 and 535.3." *Davidson*, 594 N.W.2d at 837 (citing *Christensen*, 554 N.W.2d at 262). Relying on Section 85.30, Plaintiff argues that Meritor has failed to pay interest to him for approximately two and one-half years. *See* Pl.'s Br. In Support of Resistance to Def.'s Mot. for Summ. J. at 10. This time period presumably encompasses the period from the date of Plaintiff's injury, January 27, 1999, to the current proceedings. The Court disagrees with Plaintiff's interpretation of Section 85.30. Section 85.30 provides that if compensation payments are not paid *when due*, interest will be added to the unpaid portion. As noted in the Court's discussion *supra*, compensation payments in this case were not actually *due* until Plaintiff achieved maximum medical improvement on July 15, 1999. Thus, Plaintiff's claim for bad faith failure to pay interest could only legitimately encompass the time period from that date until the present, a period of approximately two years. The

Court will not consider lack of interest payments on the additional one-half percent impairment payment. As indicated above, the Court does not believe that Meritor was legally obligated to pay an additional one-half percent impairment benefit. If there was no legal obligation to make a payment, there could be no legal obligation to pay interest and, consequently, no bad faith could arise from Meritor's failure to pay interest on the additional one-half percent.

■ Even assuming that a bad faith claim for nonpayment of interest is cognizable under Iowa law, Plaintiff's claim fails as a matter of law. The same bad faith standard previously articulated applies to Plaintiff's claim for bad faith failure to pay interest. Plaintiff must prove Meritor lacked a reasonable basis for failing to pay interest from July 15, 1999 to the present, and that Meritor knowingly or recklessly disregarded the lack of a reasonable basis for failing to pay interest. *See Dolan,* 431 N.W.2d at 794. During the time period from July 15, 1999, the date of Plaintiff's maximum medical improvement, to September, 17, 1999, the date Meritor made a three and one-half permanent partial disability payment, the Court believes that Meritor had a "reasonable basis" for delaying interest payments. The same reasoning applicable to the delay in payment of benefits is applicable to the delay in making interest payments, i.e., that Plaintiff's claim was "fairly debatable" and Meritor was justifiably investigating the claim.

■ There is no dispute in the record that Meritor never designated any portion of its payment to Plaintiff as interest. Meritor, however, argues that it paid interest by operation of law because, "[e]ven if interest is deducted from the payments made by defendant at the times they were made, the payment of benefits made by defendant would still be within the range opined by Dr. Thomas Wallace at the times those ranges were given." Def.'s Statement of Additional Facts that Preclude Summ. J. at 1. In the uncontradicted affidavit of Janice DeHart, the regional workers' compensation manager for Meritor, interest on benefits between July 15, 1999 and September 17, 1999 would be approximately $30.61. If that amount is deducted from the total payment of $2648.97 made on September 17, 1999, the amount which would remain for a benefit payment would equate payment for an impairment rating of 3.46%, still well within the 2–5% impairment opined by Dr. Wallace. DeHart Aff. at 1–2. Under the "United States rule," payments on workers' compensation claims must be first applied to accrued interest and the balance, if any, will be applied to the principal. *See Davidson,* 594 N.W.2d at 839. Thus, if the Court assumes that interest was owed to Plaintiff pursuant to Section 85.30, using the United States rule, Meritor has only failed to pay interest to the Defendant on $30.61 in benefits. Any interest on such a small amount is negligible and, in the opinion of the Court, was more than adequately covered by the additional one-half percentage payment made in September 2000. The Court believes this is sufficient to support Meritor's claim that it paid interest by operation of law.

Additionally, Meritor could have informed Plaintiff in September 1999 that it would pay only 3.46% impairment plus interest to date. Had Meritor done so, the overall analysis of this Court would not change. Plaintiff still would have failed to generate sufficient fact issues on his claims of bad faith because Meritor has come forward with adequate evidence that it had a reasonable basis to delay payment on Plaintiff's claim. In light of Meritor's additional one-half percentage impairment payment and the Court's finding that delay of payment was reasonable under the circumstances, it is reasonable to conclude

that Meritor did not act with knowledge or reckless disregard of its obligation to pay interest. Plaintiff has failed to make a prima facie showing of bad faith and his claim must fail as a matter of law.

## IV. CONCLUSION

The sole issue presented to this Court is the issue of whether Meritor acted in bad faith in its handling of Plaintiff McKim's workers' compensation claim. The Court does not believe that Plaintiff has presented sufficient evidence to withstand Defendant's summary judgment motion on that issue. Plaintiff McKim's primary dissatisfaction with Meritor's handling of his claim seems to be the substitution of Dr. Wallace's impairment rating for the higher impairment rating generated by Dr. Hartley. That issue is one this Court cannot decide. While this Court can conclude that Meritor did not behave unreasonably in its handling of the claim, it cannot determine what an appropriate impairment rating is in this matter. An action filed with the Industrial Commissioner would provide the appropriate forum for that determination.

For the foregoing reasons, it is the ORDER of the Court that Defendant Meritor Automotive, Inc.'s Motion for Summary Judgment is hereby GRANTED in its entirety. Plaintiff McKim's Motion for Partial Summary Judgment was WITHDRAWN at hearing and is therefore not considered in this Order.